UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| R.H. DONNELLEY CORPORATION, et al.,[1] | Case No. 09-11833 (___) |
| Debtors. | Joint Administration Requested |

**MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 552 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, AND (III) SCHEDULING A FINAL HEARING**

The above-captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (the "Motion") pursuant to sections 105, 361, 362, 363(c), 363(m) and 552 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") for entry of:

(I) an interim order, in substantially the form attached hereto as Exhibit A (the "RHDI Interim Order"), and a final order (the "Final RHDI Order," together with the RHDI Interim Order, the "RHDI Cash Collateral Orders") (i) authorizing the RHDI Operating Debtors, (as defined below) to use cash collateral, as such term is defined in 11 U.S.C. § 363(a) (the "RHDI Cash Collateral"), in which the RHDI Administrative Agent and RHDI Lenders (each term as defined below) have liens and security interests; (ii) granting adequate protection to the RHDI Administrative Agent and the RHDI Lenders; and (iii) scheduling a final hearing (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: R.H. Donnelley Corporation (0040), R.H. Donnelley Inc. (7635), DonTech Holdings, LLC (1351), R.H. Donnelley Publishing & Advertising of Illinois Holdings, LLC (1433), DonTech II Partnership (0375), R.H. Donnelley Publishing & Advertising of Illinois Partnership (9571), R.H. Donnelley Publishing & Advertising, Inc. (8228), Get Digital Smart.com, Inc. (4530), R.H. Donnelley APIL, Inc. (6495), RHD Service LLC (0222), Dex Media, Inc. (9762), Dex Media East, Inc. (5763), Dex Media East LLC (4575), Dex Media East Finance Co. (5761), Dex Media West, Inc. (7004), Dex Media West LLC (3487), Dex Media West Finance Co. (7059), Dex Media Service LLC (9647), Business.com, Inc. (9750), and Work.com, Inc. (5224). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 Winstead Drive, Cary, NC 27513.

"Final Hearing") on the Motion within thirty (30) days of the Petition Date (as defined below) to consider entry of the Final RHDI Order and approving certain notice procedures with respect thereto;

(II) an interim order, in substantially the form attached hereto as Exhibit B (the "DME Interim Order"), and a final order (the "Final DME Order," together with the DME Interim Order, the "DME Cash Collateral Orders") (i) authorizing the DME Operating Debtors (as defined below) to use cash collateral, as such term is defined in 11 U.S.C. § 363(a) (the "DME Cash Collateral") in which the DME Administrative Agent and the DME Lenders (each term as defined below) have liens and security interests; (ii) granting adequate protection to the DME Administrative Agent and the DME Lenders; and (iii) scheduling the Final Hearing on the Motion within thirty (30) days of the Petition Date to consider entry of the Final DME Order and (b) approving certain notice procedures with respect thereto; and

(III) an interim order, in substantially the form attached hereto as Exhibit C (the "DMW Interim Order" and, collectively with the RHDI Interim Order and the DME Interim Order, the "Interim Orders"), and a final order (the "Final DMW Order," together with the DMW Interim Order, the "DMW Cash Collateral Orders") (the DMW Cash Collateral Orders, the RHDI Cash Collateral Orders, and the DME Cash Collateral Orders are collectively referred to herein as the "Cash Collateral Orders") (i) authorizing the DMW Operating Debtors (as defined below) to use cash collateral, as such term is defined in 11 U.S.C. § 363(a) (the "DMW Cash Collateral," together with the RHDI Cash Collateral and the DME Cash Collateral, the "Cash Collateral") in which the DMW Administrative Agent and the DMW Lenders (each term as defined below) have liens and security interests; (ii) granting adequate protection to the DMW Administrative Agent and the DMW Lenders; and (iii) scheduling the Final Hearing on the

Motion within thirty (30) days of the Petition Date to consider entry of the Final DMW Order and approving certain notice procedures with respect thereto.

The facts and circumstances supporting this Motion are set forth in the concurrently filed Affidavit of Steven M. Blondy in Support of First Day Motions (the "Blondy Affidavit"). In further support of the Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On May 28, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On or about the Petition Date, the Debtors also filed motions or applications seeking certain customary "first day" relief, including an order to have these cases jointly administered.

2. The Debtors continue in possession of their respective properties and continue to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, 362, 363(c), 363(m) and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Rules 2002-1, 4001-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND OF THE DEBTORS

4. The Debtors are one of the leading local search providers and directory publishers in the United States. Through the Dex® Advantage, the Debtors leverage and market

their customers' business information through a single profile and distribute such information via a variety of local search products. The Dex Advantage ensures that advertisers' business content and messages are found wherever, whenever, and however consumers choose to search. The Dex Advantage spans multiple media platforms available to local advertisers, including print with the Dex directories, which the Debtors co-brand with other recognizable brands in the industry, including Qwest, Embarq and AT&T, online and mobile devices with dexknows.com®, voice-activated directory search at 1-800-Call-Dex™, and leading search engines and other online sites via Dex Net™. The Debtors' proprietary database contains up-to-date information for more than 600,000 national and local businesses located in 28 states and an infrastructure to service these national and local advertisers. The Debtors publish print directories in over 600 markets, with a combined circulation of approximately 80 million.

5.  The Debtors provide the following marketing products and services to their customers: (i) marketing consultation, including the assessment of marketing programs and advertisements, advertising design and copywriting, and advertising placement consultation; (ii) industry and market-specific research and analysis of consumer searching behaviors; and (iii) distribution of the advertisers' business information through a variety of print and online media platforms. The dexknows.com platform, which consists of approximately 11.5 million business listings and more than 190 million residential listings from across the United States, allows consumers to search listings based on a category, business name, or set of keyword terms within a specific geographic region. The Debtors also provide business-to-business advertising services, with online properties that include Business.com, the leading business search engine and pay-per-click advertising network serving more than 40 million unique business users and

thousands of advertisers every month, and Work.com, a business-to-business publishing platform where experts share advice on common business topics.

6. R.H. Donnelley Corporation ("RHD") directly or indirectly wholly-owns each of the other Debtors (collectively with RHD, the "Company"). The Company reported net revenues of approximately $2.6 billion for the year ended December 31, 2008. As of the Petition Date, the Company had approximately $9.7 billion of outstanding funded debt, consisting of (i) the secured bank debt of R.H. Donnelley Inc. ("RHDI"), which is guaranteed by RHD and the subsidiaries of RHDI, in the aggregate principal amount of approximately $1.4 billion, (ii) the secured bank debt of Dex Media East LLC ("DME"), which is guaranteed by Dex Media East, Inc. and Dex Media East Finance Co., in the aggregate principal amount of approximately $1.1 billion, (iii) the secured bank debt of Dex Media West LLC ("DMW"), which is guaranteed by Dex Media West, Inc. and Dex Media West Finance Co., in the aggregate principal amount of approximately $1.1 billion, (iv) approximately $3.2 billion of unsecured notes issued by RHD, (v) approximately $1.3 billion of unsecured notes issued by Dex Media, Inc. ("DMI"), (vi) approximately $1.2 billion of unsecured notes issued by DMW, and (vii) approximately $413 million of unsecured notes issued by RHDI, which are guaranteed by RHD. As of the Petition Date, the Company employed approximately 3,650 employees, of whom approximately 1,180 are unionized. The Company's corporate headquarters are located in Cary, North Carolina.

7. The Company's operating performance depends upon its ability to generate revenues from advertising sales. In 2008, the Company experienced a significant decline in advertising sales due to the recent economic downturn and increased competition in the local business advertising industry. The Company operates in a highly competitive and fragmented industry, competing not only against other national and local print and online

directory publishers, but also against other types of media – including television, newspapers, radio, Internet search engines, and advertising networks. Concurrent with the downturn in advertising revenue, dramatic dislocations in the capital markets have adversely impacted the Company's near term prospects for refinancing its outstanding indebtedness as such obligations mature. In light of the combination of contracting advertising revenue and the current state of the credit markets, the Debtors found it necessary to commence these chapter 11 cases.

## SUMMARY OF PREPETITION INDEBTEDNESS

8.  Prior to the Petition Date, the Company funded its operations through, among other things, senior secured term loans and revolving credit facilities (collectively, the "Prepetition Secured Debt"). Each of RHDI, DME and DMW is a borrower under a prepetition senior secured credit facility, as described in greater detail below. Approximately $3.64 million of Prepetition Secured Debt was outstanding as of the Petition Date.

(i) **The RHDI Facility**

9.  RHDI[2] is a borrower under that certain Second Amended and Restated Credit Agreement (as amended, supplemented or otherwise modified, the "RHDI Credit Agreement"), dated as of December 13, 2005, among RHD, RHDI, the lenders from time to time party thereto (collectively, the "RHDI Lenders"), and Deutsche Bank Trust Company Americas, as administrative agent (the "RHDI Administrative Agent"). The Obligations[3] under the RHDI Credit Agreement (collectively, the "RHDI Obligations") include an outstanding balance of approximately $1,434,000,000, consisting of, among other things (i) a $175,000,000 revolving

---

[2] Together with Debtors DonTech Holdings, LLC, The DonTech II Partnership, R.H. Donnelley Publishing & Advertising of Illinois Holdings, LLC, R.H. Donnelley Publishing & Advertising of Illinois Partnership, Get Digital Smart.com, Inc., R.H. Donnelley APIL, Inc. and R.H. Donnelley Publishing & Advertising, Inc., the "RHDI Operating Debtors."

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the applicable Cash Collateral Order.

credit facility with approximately $165,000,000 in principal balance outstanding and (ii) term loan D-1 and D-2 facilities, which have approximately $1,269,000,000 in principal balance outstanding (collectively, the "RHDI Facility"). The RHDI Obligations are guaranteed by the other RHDI Operating Debtors and by RHD.

10. The RHDI Obligations are secured by liens and security interests on (i) substantially all assets and property and all proceeds thereof (including, without limitation, the RHDI Cash Collateral) of the RHDI Operating Debtors and (ii) the capital stock of the RHDI Operating Debtors (collectively, the "RHDI Collateral").

**(ii)   The DME Facility**

11. DME[4] is a borrower under that certain Credit Agreement (as amended, supplemented, or otherwise modified, the "DME Credit Agreement"), dated as of October 24, 2007, among DME, DMEI, Debtor Dex Media, Inc. ("Dex Media"), the lenders from time to time party thereto (collectively, the "DME Lenders"), and JPMorgan Chase Bank, N.A., as administrative agent (the "DME Administrative Agent"). The Obligations under the DME Credit Agreement (collectively, the "DME Obligations") include an outstanding balance of approximately $1,100,000,000 consisting of, among other things, (i) a $100,000,000 revolving credit facility, with approximately $92,000,000 in principal balance outstanding; (ii) a tranche A term loan facility, which has approximately $631,000,000 in principal balance outstanding; and (iii) a tranche B term loan facility, which has approximately $378,000,000 in principal balance outstanding (collectively, the "DME Facility"). The DME Obligations are guaranteed by the other DME Debtors.

---

[4] Together with Debtors Dex Media East, Inc. ("DMEI") and Dex Media East Finance Co. ("DMEFC"), the "DME Operating Debtors."

12. The DME Obligations are secured by liens and security interests on (i) substantially all assets and property of the DME Debtors, and all proceeds thereof (including, without limitation, the DME Cash Collateral), (ii) the equity interests of DME and DMEFC, and (iii) the equity of DMEI, as pledged by Dex Media (collectively, the "DME Collateral").

**(iii) The DMW Facility**

13. DMW[5] is a borrower under that certain Credit Agreement (as amended, supplemented, or otherwise modified, the "DMW Credit Agreement"), dated as of June 6, 2008, among DMW, DMWI, Dex Media, the lenders from time to time party thereto (collectively, the "DMW Lenders," together with the RHDI Lenders and the DME Lenders, the "Lenders"), and JPMorgan Chase Bank, N.A., as administrative agent (the "DMW Administrative Agent," together with the RHDI Administrative Agent and DME Administrative Agent, the "Administrative Agents"). The Obligations under the DMW Credit Agreement (collectively, the "DMW Obligations") include an outstanding balance of approximately $1,107,000,000, consisting of, among other things (i) a $90,000,000 revolving credit facility with approximately 85,000,000 in principal balance outstanding; (ii) a tranche A term loan facility, which has approximately $123,000,000 outstanding; and (iii) a tranche B term loan facility which has approximately $899,000,000 outstanding (the "DMW Facility," together with the RHDI Facility and the DME Facility, the "Prepetition Facilities"). The DME Obligations are guaranteed by the other DME Debtors.

14. The DMW Obligations are secured by liens and security interests on (i) substantially all assets and property of the DMW Debtors, and all proceeds thereof (including, without limitation, the Cash Collateral), (ii) the equity interests of DMW and DMWFC, and (iii)

---

[5] Together with Debtors Dex Media West, Inc. ("DMWI") and Dex MediaWest Finance Co. ("DMWFC"), the "DMW Operating Debtors."

the equity of DMWI, as pledged by Dex Media (collectively, the "DMW Collateral," together with the RHDI Collateral and the DME Collateral, the "Prepetition Collateral").

## THE DEBTORS' PROPOSED USE OF CASH COLLATERAL

15.     As set forth in the Blondy Affidavit, the RHDI Operating Debtors, the DME Operating Debtors, and the DMW Operating Debtors (collectively, the "Operating Debtors") Debtors have an immediate and critical need to use the Cash Collateral in order to preserve and protect the value of their estates.[6] The Operating Debtors will require use of the Cash Collateral in order to conduct their day-to-day operations and to, among other things, pay salaries, wages and benefits to, or on behalf of, their employees, make payments to their vendors, and pay various overhead expenses and ongoing administrative expenses during the course of the chapter 11 cases. The cash needs of the Operating Debtors for the thirteen (13) week period starting on the Petition Date are set forth in the respective budgets of each group of Operating Debtors (collectively, the "Approved Budgets") that (i) must be reasonably acceptable to the Administrative Agents and the Lenders and (ii) will be updated periodically. The Approved Budgets are collectively attached hereto as Exhibit D.

16.     The Debtors and the Administrative Agents have negotiated at arm's-length and in good faith regarding the Operating Debtors' continued use of the applicable Operating Debtors' Cash Collateral. As a result of these negotiations, the Debtors and the Administrative Agents have reached an agreement on the terms of the Operating Debtors' continued

---

[6] RHD Service LLC ("RHDS"), one of the Debtors herein, had approximately $175 million of cash on hand as of the Petition Date (the "RHDS Cash"). The RHDS Cash is not encumbered by liens in favor of the Administrative Agents and therefore does not constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code. Accordingly, the RHDS Cash is not subject to any provisions of the proposed Cash Collateral Orders and will not be encumbered by the adequate protection liens or claims that will be granted to the Administrative Agents for the benefit of the Lenders.

use of the Cash Collateral and the adequate protection packages that the applicable Administrative Agents and the Lenders will receive, as reflected in the proposed Interim Orders.

**RELIEF REQUESTED**

17. By this Motion, the Debtors seek entry of the Interim Orders, in substantially the forms attached hereto as Exhibit A, Exhibit B and Exhibit C, pursuant to sections 105, 361, 362, 363, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rules 2002-1, 4001-1 and 6004-1, (i) authorizing the Operating Debtors to use their respective Cash Collateral in accordance with the terms set forth herein and in the Interim Orders; (ii) granting adequate protection to the Administrative Agents and Lenders pursuant to section 363 of the Bankruptcy Code on the terms set forth in the Interim Orders; and (iii) scheduling a final hearing within thirty (30) days of the Petition Date to consider entry of the Final Orders granting the relief requested in this Motion on a final basis and approving the form of notice with respect thereto. The Debtors also request that the Court waive any applicable stay (including under Bankruptcy Rule 6004) to allow the Interim Orders to become effective immediately upon entry.

18. In order to maintain their business operations and pay the related expenses, the Operating Debtors seek the authority to continue using their respective existing Cash Collateral. The Debtors and the Administrative Agents have reached an agreement on the terms of the Adequate Protection Packages (as defined below) and the other terms of the Interim Orders and, accordingly, the Administrative Agents have consented to the relief requested herein. The requirements of section 363(c) of the Bankruptcy Code are therefore satisfied and

the Debtors should be permitted to use Cash Collateral in accordance with the terms of the Interim Orders.[7]

## SUMMARY OF THE ADEQUATE PROTECTION PACKAGES

19. The Interim Orders provide that the Administrative Agents and the Lenders will receive, among other things, the following forms of adequate protection (collectively, the "Adequate Protection Packages") in consideration for their consent to the Debtors' continued use of the Cash Collateral pursuant to the terms of the Interim Orders:

    *(i)    Adequate Protection Liens and 507(b) Claims*

(a) The RHDI Administrative Agent and RHDI Lenders will receive (i) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code (the "RHDI Adequate Protection Priority Claim"), (ii) valid, binding, continuing, enforceable, fully-protected, non-voidable first priority replacement liens on and security interests in all of the RHDI Collateral and any unencumbered property of the RHDI Operating Debtors (collectively, the "RHDI Adequate Protection Liens").

(b) The DME Administrative Agent and DME Lenders will receive (i) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code (the "DME Adequate Protection Priority Claim"), (ii) valid, binding, continuing, enforceable, fully-protected, non-voidable first priority replacement liens on and security interests in all of the DME Collateral and any unencumbered property of the DME Operating Debtors (collectively, the "DME Adequate Protection Liens").

(c) The DMW Administrative Agent and DMW Lenders will receive (i) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code (the "DMW Adequate Protection Priority Claim" and collectively with the RHDI Adequate Protection Priority Claim and the DME Adequate Protection Priority Claim, the "Adequate Protection Priority Claims"), (ii) valid, binding, continuing, enforceable, fully-protected, non-voidable first priority replacement liens on and security interests in all of the DMW Collateral and any unencumbered property of the DMW Operating Debtors (collectively, the "DMW Adequate Protection Liens," and collectively with the RHDI Adequate Protection Liens and the DME Adequate Protection Liens, the "Adequate Protection Liens").

---

[7] Section 363(c)(2) of the Bankruptcy Code permits the debtor to use, sell or lease "cash collateral" under subsection (c)(1) if each entity that has an interest in such cash collateral consents. See 11 U.S.C. § 363(c)(2).

*(ii)    Payment of Interest and Professional Fees and Expenses*

(d) The RHDI Administrative Agent and RHDI Lenders shall be entitled to (i) the payment of any unpaid prepetition interest, fees and costs in accordance with the RHDI Credit Agreement, (ii) the current payment of accrued but unpaid interest (at the non-default interest rate payable under the RHDI Credit Agreement, with the Eurodollar option being available to RHDI) as and when due and payable under the RHDI Credit Agreement, (iii) all mandatory prepayments and/or scheduled amortization payments on the date such payments become due in accordance with the RHDI Credit Agreement, and (iv) the current payment of (a) the reasonable fees and expenses of legal counsel or other professionals hired by or on behalf of the RHDI Administrative Agent and (b) all reasonable out-of-pocket expenses of each of the members of the informal steering committee of the RHDI Lenders (the "RHDI Steering Committee") incurred in connection with their participation in the RHDI Steering Committee (collectively, the "RHDI Interest and Fees," together with the RHDI Adequate Protection Liens and RHDI Adequate Protection Priority Claim, the "RHDI Adequate Protection Package").

(e) The DME Administrative Agent and DME Lenders shall be entitled to (i) the payment of any unpaid prepetition interest, fees and costs in accordance with the DME Credit Agreement, (ii) the current payment of accrued but unpaid interest (at the non-default interest rate payable under the DME Credit Agreement, with the Eurodollar option being available to DME) as and when due and payable under the DME Credit Agreement, (iii) all mandatory prepayments and/or scheduled amortization payments on the date such payments become due in accordance with the DME Credit Agreement, and (iv) the current payment of (a) the reasonable fees and expenses of legal counsel or other professionals hired by or on behalf of the DME Administrative Agent and (b) all reasonable out-of-pocket expenses of each of the members of the informal steering committee of DME Lenders (the "DME Steering Committee") incurred in connection with their participation in the DME Steering Committee (collectively, the "DME Interest and Fees," together with the DME Adequate Protection Liens and DME Adequate Protection Priority Claim, the "DME Adequate Protection Package").

(f) The DMW Administrative Agent and DMW Lenders shall be entitled to (i) the payment of any unpaid prepetition interest, fees and costs in accordance with the DMW Credit Agreement, (ii) the current payment of accrued but unpaid interest (at the non-default interest rate payable under the DMW Credit Agreement, with the Eurodollar option being available to DMW) as and when due and payable under the DMW Credit Agreement, (iii) all mandatory prepayments and/or scheduled amortization payments on the date such payments become due in accordance with the DMW Credit Agreement, and (iv) the current payment of (a) the reasonable fees and expenses of legal counsel or other professionals hired by or on behalf of the DMW Administrative Agent and (b) all reasonable out-of-pocket expenses of each of the members of the informal steering committee of DMW Lenders (the "DMW Steering Committee") incurred in connection with

their participation in the DMW Steering Committee (collectively, the "DMW Interest and Fees," together with the DMW Adequate Protection Liens and DMW Adequate Protection Priority Claim, the "DMW Adequate Protection Package").

20. The Debtors believe that the foregoing Adequate Protection Packages will protect the Administrative Agents and the Lenders from any potential diminution in the value of their Prepetition Collateral, including their Cash Collateral, from and after the Petition Date.

**Highlighted Provisions under Bankruptcy Rule 4001 and Local Rule 4001-2**

21. The provisions described in Bankruptcy Rule 4001(c)(1)(B)(i)-(xi), to the extent applicable, are set out at the following sections of the Interim Orders:

> Release, Waiver or Limitation on Rights under Section 506(c).
>
> (i) RHDI Interim Order ¶¶ 11, 12 (waiver only applicable upon entry of the Final RHDI Order).
>
> (ii) DME Interim Order ¶¶ 11, 12 (waiver only applicable upon entry of the Final DME Order).
>
> (iii) DMW Interim Order ¶¶ 11, 12 (waiver only applicable upon entry of the Final DMW Order).

22. In accordance with Local Rule 4001-2(a)(i)(A)-(G), the Debtors also draw the Court's attention to certain material provisions of the attached Interim Orders:

> Binding the Estate to Validity, Perfection or Amount of Secured Debt or Limitations on Investigation (Local Rule 4001-2(a)(i)(B)).
>
> (i) RHDI Interim Order ¶ 4.
>
> (ii) DME Interim Order ¶ 4.
>
> (iii) DMW Interim Order ¶ 4.
>
> Waiver of Section 506(c) Surcharge (Local Rule 4001-2(a)(i)(C)).
>
> (i) RHDI Interim Order ¶¶ 11, 12 (waiver only applicable upon entry of the Final RHDI Order).
>
> (ii) DME Interim Order ¶¶ 11, 12 (waiver only applicable upon entry of the Final DME Order).

(iii) DMW Interim Order ¶¶ 11, 12 (waiver only applicable upon entry of the Final DMW Order).

<u>Liens on Avoidance Actions (Local Rule 4001-2(a)(i)(D))</u>.

(i) RHDI Interim Order ¶ 8 (only applicable upon entry of the Final RHDI Order).

(ii) DME Interim Order ¶ 8 (only applicable upon entry of the Final DME Order).

(iii) DMW Interim Order ¶ 8 (only applicable upon entry of the Final DMW Order).

## REQUEST FOR INTERIM RELIEF

23. Bankruptcy Rule 4001(b) permits the court to approve a debtor's request for use of cash collateral during the 15-day period following the filing of a motion for authority to use cash collateral "as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2). In examining such request under Bankruptcy Rule 4001, courts apply the same business judgment standard as is applicable to other business decisions. <u>See</u>, <u>e.g.</u>, <u>In re Ames Dept. Stores, Inc.</u>, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). The Debtors submit that, for the reasons set forth herein, authority for the Debtors to use the Cash Collateral on an interim basis as requested in this Motion is necessary to avert immediate and irreparable harm to their business operations and estates and accordingly request that the Interim Orders be entered as soon as practicable following the Petition Date.

## REQUEST FOR A FINAL HEARING

24. Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), the Debtors respectfully request that the Court set a date for the Final Hearing that is no later than thirty (30) days following the Petition Date.

## NOTICE

25. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) counsel to the agents for the Debtors' prepetition credit facilities; (vii) counsel to the ad-hoc committee of the Debtors' prepetition noteholders; (viii) the indenture trustees for each series of the Debtors' prepetition notes; (ix) each of the Debtors' cash management banks; and (x) all parties asserting liens of record on the Prepetition Collateral as of the Petition Date. Notice of this Motion will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Orders, in substantially the form attached hereto as <u>Exhibit A</u>, <u>Exhibit B</u> and <u>Exhibit C</u>, and grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      May 28, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Larry J. Nyhan
Jeffrey C. Steen
Jeffrey E. Bjork
Bojan Guzina
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/_

Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS-IN-POSSESSION