## IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| R.H. DONNELLEY CORPORATION, et al.,[1] | ) | Case No. 09-11833 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Ref. Docket No.: 14 |

### INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 552 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

### (RHDI INTERIM ORDER)

Upon the motion, dated May 28, 2009 (the "Motion") [D.I. 14],[2] of R.H.

Donnelley Corporation and its affiliated debtors, each as debtor and debtor-in-possession

(collectively, the "Debtors") in the above-captioned cases (the "Cases"), for interim and final

orders under sections 105, 361, 362, 363(c), 363(m) and 552 of title 11 of the United States

Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001

---

[1] The Debtors, followed by the last four digits of their respective taxpayer identification numbers, are as follows: R.H. Donnelley Corporation (0040), R.H. Donnelley Inc. (7635), DonTech Holdings, LLC (1351), R.H. Donnelley Publishing & Advertising of Illinois Holdings, LLC (1433), DonTech II Partnership (0375), R.H. Donnelley Publishing & Advertising of Illinois Partnership (9571), R.H. Donnelley Publishing & Advertising, Inc. (8228), Get Digital Smart.com, Inc. (4530), R.H. Donnelley APIL, Inc. (6495), RHD Service LLC (0222), Dex Media, Inc. (9762), Dex Media East, Inc. (5763), Dex Media East LLC (4575), Dex Media East Finance Co. (5761), Dex Media West, Inc. (7004), Dex Media West LLC (3487), Dex Media West Finance Co. (7059), Dex Media Service LLC (9647), Business.com, Inc. (9750), and Work.com, Inc. (5224).

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Credit Agreement referenced and defined herein.

and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"),
seeking:

       (I)     authorization for the Operating Debtors[3] pursuant to sections 105,
361, 362, 363 and 552 of the Bankruptcy Code to: (a) use the Cash Collateral (as
defined in paragraph 4(e) below), and all other Prepetition Collateral (as defined
in paragraph 4(d) below); and (b) provide adequate protection to the
Administrative Agent and the Lenders (each as defined below) under the Second
Amended and Restated Credit Agreement among R.H. Donnelley Corporation
("Holdings"), R.H. Donnelley Inc. (the "Borrower"), as Borrower, the lenders
from time to time party thereto (the "Lenders"), JPMorgan Chase Bank, N.A., as
Syndication Agent, Bear Stearns Corporate Lending Inc., Credit Suisse, Cayman
Islands Branch, Goldman Sachs Credit Partners L.P., UBS Securities LLC and
Wachovia Bank, National Association, as Co-Documentation Agents and
Deutsche Bank Trust Company Americas, as Administrative Agent (the
"Administrative Agent"), dated as of December 13, 2005 (as amended,
supplemented or otherwise modified, the "Credit Agreement");

       (II)    subject to entry of the Final Order (other than with respect to
claims arising under section 549 of the Bankruptcy Code), authorization to grant
adequate protection liens on the proceeds of the Operating Debtors' claims and
causes of action (but not on the actual claims and causes of action) arising under
sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively,

---

[3]    The term "Operating Debtors" shall mean those Debtors that are either a Borrower or Guarantor
under the Credit Agreement.

                                     

the "Avoidance Actions"), as identified pursuant to Rule 4001-2(D) of the

Delaware Bankruptcy Local Rules (the "Local Rules");

      (III)    subject to entry of the Final Order, and except to the extent of the

Carve Out (as defined below), the waiver by the Debtors of any right to surcharge

against the Collateral (as defined in paragraph 8 below) pursuant to section 506(c)

of the Bankruptcy Code or any other applicable principle of equity or law, as

identified pursuant to Local Rule 4001-2(C);

      (IV)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing

(the "Interim Hearing") on the Motion to be held before this Court to consider

entry of this proposed interim order (the "Interim Order") authorizing the

Operating Debtors to use the Cash Collateral; and (b) granting adequate

protection to the Administrative Agent and the Lenders; and

      (V)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the

"Final Hearing") for this Court to consider entry of a final order (the "Final

Order") authorizing the Operating Debtors on a final basis to continue to use the

Cash Collateral and authorizing and approving the relief requested in the Motion

to become effective pursuant to the Final Order.

The Interim Hearing having been held by this Court on June 1, 2009; and upon

the record made by the Debtors at the Interim Hearing; and the Court having heard and

resolved or overruled all objections to the interim relief requested in the Motion; and it

appearing that the interim relief requested in the Motion is in the best interests of the

DB02:8253794.1                                                                 068387.1001

Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefore,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction.*  This Court has core jurisdiction over the Cases commenced on May 28, 2009 (the "Petition Date"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Committee Formation.*  A statutory committee of unsecured creditors has not yet been appointed in the Cases.

3.    *Notice.*  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors, whether by telecopy, email, overnight courier or hand delivery, on the thirty largest (on a consolidated basis) unsecured creditors of the Debtors, counsel to the *ad hoc* group of the Debtors' prepetition noteholders (the "Informal Noteholder Group"), the cash management banks with whom the Debtors maintain deposit, lockbox, concentration, disbursement and similar accounts (the "Cash Management Banks"), counsel to the Administrative Agent under each of the Debtors' senior credit agreements, all secured creditors of record, the Securities and Exchange Commission, the United States Trustee for the District of Delaware, and the Internal Revenue Service.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and of the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d).

4.    *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 17 and 18 below) the Operating Debtors admit, stipulate, and agree that:

(a)    as of the Petition Date, the Operating Debtors were indebted and liable to the Lenders, without defense, counterclaim or offset of any kind, for all of the Obligations, including without limitation, the Loans made by the Lenders in the aggregate principal amount of approximately $1,433,966,507 and for Letters of Credit in the face amount of approximately $717,600, under the Credit Agreement, the Second Amended and Restated Guarantee and Collateral Agreement, dated as of December 13, 2005 (as amended or restated from time to time, the "Guarantee and Collateral Agreement"), and the other Loan Documents, plus accrued and unpaid interest thereon, reimbursement obligations in respect thereof, indemnification obligations, cash management obligations, obligations arising under Hedge Agreements (as defined in the Credit Agreement) and fees and expenses (including, without limitation, the reasonable fees and expenses of the Administrative Agent's attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith, in each case in accordance with the terms of the Loan Documents;

(b)    the Operating Debtors' Obligations constitute the legal, valid and binding obligation of the Operating Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code);

(c)    (i) no portion of the Obligations is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable

068387.1001

nonbankruptcy law and (ii) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights related to the Obligations, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Administrative Agent, the Lenders, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors;

(d)      the liens and security interests granted to the Collateral Agent pursuant to and in connection with the Guarantee and Collateral Agreement and the other Loan Documents for the benefit of the Secured Parties (as defined in the Guarantee and Collateral Agreement) are valid, binding, perfected, enforceable, first priority liens and security interests, subject to permitted exceptions under the Credit Agreement, on the personal and real property constituting "Collateral" under, and as defined in, the Guarantee and Collateral Agreement (together with the Cash Collateral, the "Prepetition Collateral") and are (i) not subject to avoidance, recharacterization, reclassification or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (ii) subject and subordinate only to (A) after giving effect to this Interim Order, the Carve Out (as defined in paragraph 8 below), (B) the liens and security interests granted to secure the Adequate Protection Obligations (as defined in paragraph 7 below), and (C) valid, perfected and unavoidable liens permitted under the Loan Documents to the extent such permitted liens are senior to the liens of the Collateral Agent on the Prepetition Collateral pursuant to the terms of the Loan Documents; and

(e)      the Operating Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Operating Debtors and any amounts generated by the collection of accounts receivable, sale of inventory or other

6

disposition of the Prepetition Collateral constitute proceeds of the Prepetition Collateral and, therefore, shall be deemed cash collateral of the Collateral Agent, for the benefit of the Secured Parties within the meaning of section 363(a) of the Bankruptcy Code for the purposes hereof and under the terms hereof (the "Cash Collateral"), and the Debtors agree that such amount includes cash in an aggregate amount not less than $96.7 million as of the Petition Date.

5.    *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)    Good cause has been shown for the entry of this Interim Order.

(b)    The terms of the use of the Cash Collateral pursuant to this Interim Order are fair and reasonable, reflect the Operating Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(c)    The terms of the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Administrative Agent, and the Lenders, and, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, the Administrative Agent and the Lenders are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Order, and each is entitled to the protection provided to such entities under section 363(m) of the Bankruptcy Code.

(d)    The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).  Absent granting the interim relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  The use of the

7

Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order is in the best interest of the Debtors' estates.

      6.    *Authorization of Use of Cash Collateral and Prepetition Collateral.*

      (a)    The Operating Debtors are hereby authorized to use the Cash Collateral during the period from the Petition Date through and including the Termination Date only for (i) working capital, general corporate purposes and administrative costs and expenses of the Operating Debtors in the ordinary course of business and, in each case, subject to the Approved Budget (as defined below) and the terms hereof; and (ii) adequate protection payments to the Administrative Agent and the Lenders, as contemplated herein.

      (b)    The Operating Debtors shall only use the Cash Collateral pursuant to a thirteen-week budget in form and substance reasonably acceptable to the Administrative Agent setting forth projected cash disbursements and receipts on a line item and weekly basis (any such budget together with all updates and supplements thereto that are in form and substance acceptable to the Administrative Agent being referred to herein as the "Approved Budget"). No later than twenty (20) days prior to the expiration of the current Approved Budget, the Operating Debtors shall submit for the Administrative Agent's review and approval (with copies to the Committee and the Informal Noteholder Group) a supplemental budget for the thirteen (13) week period commencing on the first Monday following the expiration of the current Approved Budget, which supplemental budget shall be reasonably acceptable to the Administrative Agent and, upon approval thereof by the Administrative Agent, shall constitute the "Approved Budget" for purposes of this Interim Order.

8

(c)      Except as expressly set forth herein, this Interim Order does not address or otherwise permit or authorize the Debtors to use, sell, lease or otherwise dispose of any Prepetition Collateral outside the ordinary course of business or the Debtors' use of the Cash Collateral resulting therefrom, without further order of the Court.

7.      *Entitlement to Adequate Protection.*

The Administrative Agent and the Secured Parties are entitled, pursuant to sections 361, 363(c)(2) and 552 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Operating Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the Carve Out and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").

8.      *Adequate Protection Claims and Liens.*

As adequate protection, the Administrative Agent and the Lenders are hereby granted the following claims, liens, rights and benefits:

(a)      Section 507(b) Claim. The Adequate Protection Obligations due to the Administrative Agent and the Lenders shall constitute joint and several superpriority claims against the Operating Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Operating Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105,

9

326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code,

and shall at all times be senior to the rights of the Operating Debtors, and any successor trustee

or any creditor, in the Operating Debtors' Cases or any subsequent proceedings under the

Bankruptcy Code (the "507(b) Claim"), subject and subordinate only to the Carve Out.

Furthermore, all post-petition distributions and transfers by the Operating Debtors to any other

Debtor that is not an Operating Debtor (each an "Affiliated Debtor") shall constitute an allowed

administrative expense under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code against

such Affiliated Debtor in the aggregate amount of such distribution or transfer (the "Priority

Intercompany Claim").

    (b)    Adequate Protection Liens.  As security for the Adequate Protection

Obligations, effective as of the Petition Date and perfected without the necessity of the execution

by the Operating Debtors (or recordation or other filing) of security agreements, control

agreements, pledge agreements, financing statements, mortgages or other similar documents, or

the possession or control by the Collateral Agent of any Collateral, the following security

interests and liens are hereby granted to the Collateral Agent, for its own benefit and the benefit

of the Lenders (all property identified in clauses (i), (ii), (iii) and (iv) below being collectively

referred to as the "Collateral"), subject only to the Carve Out (all such liens and security interests

granted to the Collateral Agent, for its benefit and for the benefit of the Lenders pursuant to this

Interim Order, the "Adequate Protection Liens"):

    (i)    First Priority On Unencumbered Property.  Pursuant to sections

361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected, non-voidable first priority replacement lien on, and

10

security interest in, all of the Operating Debtors' rights in tangible and intangible assets, including, without limitation, all prepetition and post-petition property of the Operating Debtors' estates, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of Holdings, the Priority Intercompany Claims and the proceeds of all of the foregoing, provided that, except with respect to claims or causes of action arising under section 549 of the Bankruptcy Code, the Unencumbered Property shall not include the Avoidance Actions, but upon the entry of the Final Order, the Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

(ii)    Liens Junior To Certain Existing Liens.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, all tangible and intangible assets, including, without limitation, all prepetition and post-petition property of the Operating Debtors'

11

estates, and all products and proceeds thereof, whether now existing or hereafter

acquired, that is subject to (x) valid, perfected and unavoidable liens in existence

immediately prior to the Petition Date or (y) valid and unavoidable liens in

existence immediately prior to the Petition Date that are perfected after the

Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid,

perfected and unavoidable liens are senior in priority to the security interests and

liens in favor of the Administrative Agent and the Lenders.

(iii)    <u>Liens Senior to Certain Existing Liens</u>.  Pursuant to sections

361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected non-voidable priming lien on, and security interest in

all tangible and intangible assets, including, without limitation, all prepetition and

post-petition property of the Operating Debtors' estates, and all products and

proceeds thereof, whether now existing or hereafter acquired; provided that such

liens and security interests shall not prime (x) any valid, perfected and

unavoidable liens and security interests in existence immediately prior to the

Petition Date that are held by or granted to any person other than the Collateral

Agent or (y) valid and unavoidable liens and security interests in existence

immediately prior to the Petition Date that are perfected after the Petition Date as

permitted by section 546(b) of the Bankruptcy Code and that are held by or

granted to any person other than the Collateral Agent;

(iv)    The Adequate Protection Liens shall not be: (i) subject or

subordinate to any lien or security interest that is avoided and preserved for the

12

benefit of the Operating Debtors and their estates under section 551 of the
Bankruptcy Code, or (ii) subordinated to or made *pari passu* with any other lien
or security interest under sections 363 or 364 of the Bankruptcy Code or
otherwise.

    (c)    For purposes hereof, the "Carve Out" shall mean (i) the statutory fees
required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States
Trustee for the District of Delaware under section 1930(a) of title 28 of the United States Code
plus interest at the statutory rate (without regard to the notice set forth in (iii) below), (ii) the fees
and expenses up to $250,000 incurred by a trustee of the Operating Debtors under section 726(b)
of the Bankruptcy Code (without regard to the notice set forth in (iii) below), and (iii) following
receipt of notice from the Administrative Agent after the occurrence and during the continuance
of a Termination Event hereunder, the payment of the accrued and unpaid professional fees and
expenses that are allowed by the Court and incurred by the Debtors and any statutory committee
appointed in the Operating Debtors' Cases (or, if only a single statutory committee is appointed
in the Cases, the "Committee") and payable under sections 328, 330 and 331 of the Bankruptcy
Code (collectively, the "Allowed Professional Fees") after the first Business Day following
delivery by the Administrative Agent of a Carve Out Trigger Notice (as defined below) in an
aggregate amount not exceeding $2 million ("Carve Out Cap")[4] (plus one third of all unpaid
professional fees and expenses allowed by this Court that were incurred prior to the first
Business Day following delivery by the Administrative Agent of a Carve Out Trigger Notice

---

[4]    The remaining two-thirds of the accrued and unpaid professional fees and expenses (for an
aggregate cap of $6 million across the three cash collateral orders entered in these Cases) that are
allowed by the Court and incurred by the Debtors and the Committee will be payable from the
carve-outs set forth in the other cash collateral orders entered in these Cases.

DB02:8253794.1            068387.1001

whether allowed prior to or after delivery of a Carve Out Trigger Notice), provided that (x) the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Administrative Agent or the Lenders, it being understood that, subject to paragraph 18 below, the Carve Out may be available to cover investigation and diligence professional fees and expenses for the Committee, (y) so long as a Carve Out Trigger Notice shall not have been delivered, the total amount of the Carve Out for Allowed Professional Fees on or prior to the Termination Date shall not be reduced by the payment of fees and expenses: (a) allowed by this Court (whether before or after delivery of a Carve Out Trigger Notice) and payable under sections 328, 330 and 331 of the Bankruptcy Code; *and* (b) provided for in the Approved Budget, and (z) nothing in this Interim Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Operating Debtors' estates. For the purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by the Administrative Agent to the Borrower and its counsel, the United States Trustee for the District of Delaware and lead counsel to the Informal Noteholder Group and the Committee, which notice may be delivered following the occurrence and during the continuation of any Termination Event, stating that the Carve Out Cap has been invoked. Notwithstanding anything herein to the contrary, the Carve Out shall not apply to any Collateral proceeds paid to the Administrative Agent or the Lenders pursuant to this or any other order and all proceeds of the Collateral shall be paid to the Administrative Agent free and clear of the Carve Out.

9.      *Additional Adequate Protection*

14

As additional adequate protection,

(a)    <u>Payments</u>: The Operating Debtors are authorized and directed to pay to the Administrative Agent: (i) within three (3) Business Days following the entry of this Interim Order, any accrued and unpaid prepetition interest, fees and costs (including, without limitation, interest on Loans, interest on terminated Hedge Agreements, breakage costs, fees for Letters of Credit, commitment fees, and accrued fees owing to the Administrative Agent), in each case, calculated in accordance with the terms of the Credit Agreement and the other applicable documents; (ii) on the last Business Day of each calendar month after the entry of this Interim Order, all accrued and unpaid post petition interest, fees and costs (including, without limitation, interest on Loans, interest on terminated Hedge Agreements, breakage costs, fees for Letters of Credit, commitment fees, and accrued fees owing to the Administrative Agent), in each case, calculated based on the applicable non-default rate set forth in the Credit Agreement (with the Eurodollar option being available to the Borrower) or the other applicable documents; and (iii) all mandatory prepayments and/or scheduled amortization payments on the date such payments become due in accordance with the Credit Agreement (determined without giving effect to the acceleration of the Obligations).

(b)    <u>Fees and Expenses</u>:  Subject to the notice provisions set forth below and the resolution of any objections referenced below, the Operating Debtors are authorized and directed to pay within ten (10) days of presentment of an invoice describing in customary detail (redacted for privilege and work product) the fees, costs and expenses incurred or accrued by (x) the Administrative Agent including, without limitation, the reasonable fees and expenses of legal counsel (including local counsel) and other professionals hired by or on behalf of the

15

Administrative Agent and (y) all reasonable out-of-pocket expenses of each of the members of the informal steering committee of Lenders (the "Steering Committee") incurred in connection with their participation in the Steering Committee (*e.g.*, expenses for travel, food and lodging), but excluding any fees of legal counsel and other professionals engaged by the members of the Steering Committee. None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; provided, however, that the Administrative Agent shall submit copies of its legal counsel's and financial advisor's invoices to the Debtors, the United States Trustee for the District of Delaware and the Committee, and such parties shall have seven (7) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice, AND (ii) Any such objection must describe with particularity the items or categories of fees and expenses that are the subject of the objection and provide the specific basis for the objection to each such item or category. If any such objection is not resolved within seven (7) days after such objection is interposed, a hearing with respect thereto shall be conducted at the next regularly-scheduled omnibus hearing in these Cases, provided that the Operating Debtors shall pay any undisputed portion of such fees, costs and expenses within ten (10) days of the initial presentment of such invoice.

    (c)    Application of Payments. To the extent that any cash payments of interest, fees and expenses to the Administrative Agent pursuant to this Interim Order are not allowed under section 506(b) of the Bankruptcy Code, and at the time of such disallowance there

DB02:8253794.1    068387.1001

THE INFORMAL NOTEHOLDER GROUP FOR INFORMATIONAL PURPOSES ONLY.

is outstanding principal owed under the Credit Agreement, such payments shall be recharacterized and applied as payments of principal owed under the Credit Agreement.

(d)    Other Covenants. The Operating Debtors shall maintain their cash management arrangement in a manner reasonably acceptable to the Administrative Agent.  The Operating Debtors (i) shall not use, sell or lease any assets outside the ordinary course of business without the prior consent of the Administrative Agent and the Required Lenders and (ii) shall provide at least three (3) business days' advance notice to the Informal Noteholder Group of any motion to use, sell or lease any assets outside the ordinary course of business with the consent of the Administrative Agent and the Required Lenders.

(e)    Reporting: The Debtors shall: (i) comply with the reporting requirements set forth in Sections 5.01, 5.02 (other than the reporting requirements set forth in Section 5.02(b)) and 5.03 of the Credit Agreement together with such additional information as the Administrative Agent may reasonably request from time to time and, (ii) provide to the Administrative Agent (with simultaneous copies to counsel to the Informal Noteholder Group and the Committee) the information set forth in Schedule A hereto.

(f)    Financial Covenants:  As additional adequate protection, (i) the Operating Debtors shall not permit their Consolidated EBITDA (as defined in the Credit Agreement) measured on a cumulative basis from the Petition Date to be less than the amount specified in Schedule B hereto for each month of determination and (ii) the Debtors shall not permit their consolidated EBITDA less capital expenditures (each measured in accordance with the terms of the Credit Agreement) measured on a cumulative basis from the Petition Date to be less than the amount specified in Schedule B hereto for each month of determination.

17

10.    The Operating Debtors' right to use the Cash Collateral pursuant to this Interim Order shall automatically terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding on the earliest to occur of (i) January 31, 2010 (or such later date if the Administrative Agent and the Required Lenders provide written consent, which extension thereof shall be effective without further Court approval), (ii) forty (40) days after the Petition Date (unless such period is extended by mutual agreement of the Administrative Agent and the Debtors) if the Final Order has not been entered by this Court on or before such date, (iii) either (1) a determination by this Court, pursuant to an order entered after notice and a hearing (which hearing may be sought on an expedited basis provided that the Debtors, the Informal Noteholder Group and the Committee receive not less than two (2) Business Days notice of such hearing), or (2) a written acknowledgment by the Operating Debtors, that any of the events set forth in clauses (b), (c), (h), and (l) below (unless waived by the Administrative Agent and the Required Lenders) has occurred and is continuing, or (iv) the occurrence of any of the events set forth in clauses (a), (d), (e), (f), (g), (i), (j), (k) and (m) below (unless waived by the Administrative Agent and the Required Lenders) (the events set forth in clauses (a) through (m) below are collectively referred to herein as the "Termination Events"):

(a)    Failure of the Operating Debtors to make any payment to the Administrative Agent or the Lenders within five (5) days after such payment becomes due;

(b)    Other than with respect to clauses (a), (d), (e), (f), (g), (i), (j), (k) and (m) of this paragraph, failure of the Operating Debtors to: (i) comply with any material provision of this Interim Order; or (ii) comply with any other covenant or agreement specified in this Interim Order (other than those described in clause (i) above) in any material respect and such failure to

18

comply with any such other covenant or agreement shall continue unremedied for five (5) Business Days following notice by the Administrative Agent of such failure;

(c)     Failure of (i) the Operating Debtors to maintain Consolidated EBITDA (measured on cumulative basis from the Petition Date) in an amount equal to or greater than the amount set forth in Schedule B hereto for any month of determination or (ii) the Debtors to maintain consolidated EBITDA less capital expenditures (each measured in accordance with the terms of the Credit Agreement on a cumulative basis from the Petition Date) in an amount equal to or greater than the amount set forth in Schedule B hereto for any month of determination, each as determined pursuant to a written report that the Operating Debtors shall deliver to the Administrative Agent no later than ten (10) Business Days following the end of the applicable monthly period;

(d)     The occurrence of any "Termination Event" under, and as such term is defined in, any other cash collateral order entered in these Cases;

(e)     Any of the Cases shall be dismissed or converted to a chapter 7 case, or a chapter 11 trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Cases;

(f)     This Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Operating Debtors which have an aggregate value in excess of $2,500,000 and such order shall not be subject to stay pending appeal;

19

(g)    An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the Administrative Agent's consent;

(h)    The Operating Debtors shall create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Interim Order; (ii) carriers', mechanics', warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Credit Agreement;

(i)    The Operating Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the 507(b) Claim of the Administrative Agent and the Lenders;

(j)    Any judgment in excess of $2,500,000 as to any post-petition obligation not covered by insurance shall be rendered against the Debtors and the enforcement thereof shall not be stayed; or there shall be rendered against the Debtors a non-monetary judgment with respect to a post-petition event which has or could reasonably be expected to have a material adverse effect on the property, business, condition (financial or otherwise) of the Operating Debtors taken as a whole or the ability of the Operating Debtors to perform their obligations under this Interim Order or any other cash collateral order or stipulation entered in these Cases;

(k)    A filing by any Debtor of any motion or application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Obligations or any other cause of action against and/or with respect to the Obligations, the

20

prepetition liens securing such Obligations, the Administrative Agent or any of the Lenders (or if the Debtors support any such motion, application or adversary proceeding commenced by any third party);

      (l)     Other than payments authorized by the Court, the Operating Debtors shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables (including, without limitation, reclamation claims) in excess of $10,000 in the aggregate; or

      (m)    The termination of any support agreement among the Borrower and certain of the Lenders pursuant to the terms thereof.

The Operating Debtors shall promptly provide notice to the Administrative Agent (with a copy to counsel for the Informal Noteholder Group, the Committee and the United States Trustee for the District of Delaware) of the occurrence of any Termination Event.

      11.    *Limitation On Charging Expenses Against Collateral.*  Subject to and effective upon entry of the Final Order under Bankruptcy Rule 4001, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Administrative Agent and no such consent shall be implied from any other action, inaction, or acquiescence by the Administrative Agent, the Required Lenders or any of the Lenders.

      12.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the Administrative Agent on behalf of the Lenders pursuant to the provisions of this Interim Order or

DB02:8253794.1        068387.1001

any subsequent order of this Court shall be received free and clear of any claim, charge,

assessment or other liability, including without limitation, any such claim or charge arising out of

or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or

on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

      13.    *Reservation of Rights of the Administrative Agent and the Lenders.*  Based upon

the consent of the Administrative Agent, this Court finds that the adequate protection provided

herein is reasonable and sufficient to protect the interests of the Administrative Agent and the

Lenders.  Notwithstanding any other provision hereof, the grant of adequate protection to the

Administrative Agent and the Lenders pursuant hereto is without prejudice to the right of the

Administrative Agent or any other Lender to seek modification of the grant of adequate

protection provided hereby so as to provide different or additional adequate protection, and

without prejudice to the right of the Debtors or any other party in interest to contest any such

modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the

respective rights of the Administrative Agent and the Lenders under the Guarantee and Collateral

Agreement or the other Loan Documents or under equity or law, and the Lenders expressly

reserve all rights and remedies that the Administrative Agent and the Lenders now or may in the

future have under the Guarantee and Collateral Agreement, the Loan Documents and/or

applicable law in connection with all Defaults, Events of Default (whether arising prior to or

after the Petition Date) and Termination Events.  Except as expressly provided herein, nothing

contained in this Interim Order (including without limitation, the authorization to use any Cash

Collateral) shall have the effect of, or shall be construed as having the effect of, amending or

waiving any covenant, term or provision of the Credit Agreement or any Loan Document, or any

22

rights or remedies of the Administrative Agent or the Lenders thereunder, including (without limitation) any right to argue that failure to strictly comply with any such covenant, term or provision during the course of the Cases or that any use of Cash Collateral permitted or contemplated hereby constitutes a Default or Event of Default which is not subject to cure under section 1124 of the Bankruptcy Code or otherwise despite any consent or agreement contained herein.

14.     *Reservation of Rights.*  The entry of this Interim Order and the grant of adequate protection to the Administrative Agent and the Lenders pursuant to the terms hereof shall be without prejudice to the rights of the Operating Debtors to, following the occurrence of the Termination Date, seek the authority to use the Cash Collateral without the consent of the Lenders (including, without limitation, on terms less favorable to the Lenders than the terms of this Interim Order), and the Administrative Agent and Lenders reserve all rights with respect to contesting any such motion or request by the Operating Debtors or any other person.

15.     *Perfection of Adequate Protection Liens.*

(a)     The Administrative Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the Administrative Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order.  If the Administrative Agent determines to file any

23

financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings, and the automatic stay shall be lifted to allow such filings.

(b)    A certified copy of this Interim Order may, in the discretion of the Administrative Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording without the imposition of any stamp, intangibles, recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code; *provided, however*, that the Debtors shall reimburse the Administrative Agent or its designee for the payment of any such tax.

(c)    The Debtors shall execute and deliver to the Administrative Agent all such agreements, financing statements, instruments and other documents as the Administrative Agent may reasonably request to evidence, confirm, validate or perfect the Adequate Protection Liens.

(d)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the granting of post-petition liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the Administrative Agent and the Lenders in accordance with the terms of the Loan Documents or this Interim Order.

24

068387.1001

16.    *Preservation of Rights Granted Under this Interim Order.*

(a)    No claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the Administrative Agent and the Lenders shall be granted or allowed,  and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Operating Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (x) the 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full (and that such 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent of the effective date of such reversal,

stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate

Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of

Cash Collateral or any Adequate Protection Obligations incurred by the Operating Debtors

hereunder, as the case may be, prior to the actual receipt of written notice by the Administrative

Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all

respects by the original provisions of this Interim Order, and the Administrative Agent and the

Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section

363(m) of the Bankruptcy Code with respect to all uses of Cash Collateral, and all Adequate

Protection Obligations.

(d)     Except as expressly provided in this Interim Order, the Adequate

Protection Payments shall not be subject to counterclaim, setoff, subordination,

recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 case.

(e)     Except as expressly provided in this Interim Order or in the Loan

Documents, the Adequate Protection Obligations, the 507(b) Claims and all other rights and

remedies of the Administrative Agent and the Lenders granted by the provisions of this Interim

Order and the Loan Documents shall survive, and shall not be modified, impaired or discharged

by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the

Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of

an order confirming a plan of reorganization in any of the Cases and, pursuant to section

1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining

Adequate Protection Obligations.  The terms and provisions of this Interim Order and the Loan

Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly

26

administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the

Adequate Protection Liens, the Section 507(b) Claims, the other administrative claims granted

pursuant to this Interim Order, and all other rights and remedies of the Administrative Agent and

the Lenders granted by the provisions of this Interim Order and the Loan Documents shall

continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in

full in cash.

17.     *Effect of Stipulations on Third Parties.*  The stipulations and admissions contained

in this Interim Order, including without limitation, in paragraph 4 of this Interim Order, shall be

binding upon the Debtors and any successor thereto (including without limitation any chapter 7

or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances.  The

stipulations and admissions contained in this Interim Order, including without limitation, in

paragraph 4 of this Interim Order, shall be binding on all parties in interest, including, without

limitation, the Committee, unless: (a) the Committee or another party in interest duly files an

adversary proceeding challenging such stipulations, admissions, releases or other provisions no

later than ninety days after the Petition Date, (or such later date agreed to by the Administrative

Agent); and (b) there is a final, non-appealable order of a court of competent jurisdiction

granting the relief requested.  If no such adversary proceeding is timely filed then, without

further order of the Court; (x) the Obligations shall constitute allowed claims, not subject to

counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in

the Cases and any subsequent chapter 7 case; (y) the Administrative Agent's liens on the

Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal,

valid, binding, perfected and of the priority specified in paragraph 4(d), not subject to defense,

27

counterclaim, recharacterization, subordination or avoidance; and (z) the Obligations, the

Administrative Agent's liens on the Prepetition Collateral and the Lenders shall not be subject to

any other or further challenge by the Committee or any other party-in-interest, and any such

Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the

Debtors' estates, including without limitation, any successor thereto (including, without

limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of

the Debtors). If any such adversary proceeding is timely filed, the stipulations and admissions

contained in this Interim Order, including without limitation, in paragraph 4 of this Interim

Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of

this paragraph) on the Committee and any other person or entity, except as to any such findings

and admissions that were expressly and successfully challenged in such adversary proceeding.

Subject to applicable law, nothing in this Interim Order vests or confers on any Person (as

defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any

cause of action belonging to the Debtors or their estates.

18.    *Limitation on Use of Collateral.* The Operating Debtors shall use the proceeds of

the Prepetition Collateral (including the Cash Collateral) solely as provided in this Interim Order.

Notwithstanding anything herein or in any other order of this Court to the contrary, no Collateral,

Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to: (a) object,

contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any

amount due under the Loan Documents, or the liens or claims granted under this Interim Order

or the Loan Documents; (b) assert any Claims and Defenses or any other causes of action against

the Administrative Agent and the Lenders or their respective agents, affiliates, subsidiaries,

28

directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Administrative Agent and the Lenders hereunder; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under hereunder, _provided_ that, notwithstanding anything to the contrary herein, no more than an aggregate of $250,000 of the Prepetition Collateral (including the Cash Collateral) the Collateral or the Carve Out may be used by any Committee to investigate the validity, enforceability or priority of the Obligations or the Administrative Agent's liens on the Prepetition Collateral or investigate any Claims and Defenses or other causes action against the Administrative Agent or any of the Lenders.

19.    *Asset Sales.*  The proceeds of any sale or assignment of any Collateral under sections 363 or 365 of the Bankruptcy Code shall be applied against the Obligations, pending the final allowance of the Obligations under section 506(b) of the Bankruptcy Code, in accordance with the terms of the Credit Agreement.

20.    *Waiver of Claims and Causes of Action.*  Without prejudice to the rights of any other party, including the Committee (but subject to the limitations thereon in paragraphs 17 and 18 hereof), the Debtors have waived any and claims and causes of action against the Administrative Agent and the Lenders and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors related to this Interim Order or the negotiation of the terms thereof.

22.    *Binding Effect; Successors and Assigns.*  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the Administrative Agent, the Lenders, any Committee and the Debtors and

29

their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Administrative Agent, the Lenders and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Interim Order, the Administrative Agent and the Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

23.    *Limitation of Liability.*  In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the Loan Documents, subject to entry of the Final Order, the Administrative Agent and the Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent or any of the Lenders any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

DB02:8253794.1                                068387.1001

24.    *No Impact on Certain Contracts/ Transactions.*  No rights of any entity under sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Interim Order as to any contract or transaction of the kind listed in such sections of the Bankruptcy Code.

25.    *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Interim Order.

26.    *Final Hearing.*  The Final Hearing is scheduled for June 25, 2009 at 9:30 a.m., prevailing Eastern time, before this Court.

The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Sidley Austin LLP, One South Dearborn, Chicago, IL 60603, Attention: Jeffrey E. Bjork and Bojan Guzina, attorneys for the Debtors, (b) Bingham McCutchen LLP, 399 Park Avenue, New York, New York 10022, Attention: Steven Wilamowsky, Esq. and R. Jeffery Black, Esq., attorneys for the Administrative Agent, (c) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attention: Michael S. Stamer and 1700 Pacific Avenue, Suite 4100, Dallas, TX 75082, Attention: Sarah Link Schultz, attorneys for the Informal Noteholder Group and (d) the Office of the United States Trustee for the District of Delaware, and shall be filed with the Clerk of the

31

United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by the

foregoing no later than June 18, 2009 at 4:00 p.m., prevailing Eastern time.

Dated:    June 1, 2009
          Wilmington, Delaware

_____
KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

32