## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| R.H. DONNELLEY CORPORATION, et al.,[1] | Case No. 09-11833 (KG) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No.: 623** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION FOR R.H. DONNELLEY CORPORATION AND ITS SUBSIDIARIES

WHEREAS, R.H. Donnelley Corporation and its subsidiaries, the debtors and

debtors-in-possession in the above-captioned jointly administered cases (collectively, the

"Debtors" and, as reorganized entities after emergence, the "Reorganized Debtors"), each filed a

voluntary petition for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") on May 28, 2009 (the "Petition Date") in the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the Debtors proposed the Joint Plan of Reorganization for R.H.

Donnelley Corporation and Its Subsidiaries, dated October 21, 2009 (as the same has been or

may be further amended, supplemented or modified, the "Plan");[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: R.H. Donnelley Corporation (0040), R.H. Donnelley Inc. (7635), DonTech Holdings, LLC (1351), R.H. Donnelley Publishing & Advertising of Illinois Holdings, LLC (1433), DonTech II Partnership (0375), R.H. Donnelley Publishing & Advertising of Illinois Partnership (9571), R.H. Donnelley Publishing & Advertising, Inc. (8228), Get Digital Smart.com, Inc. (4530), R.H. Donnelley APIL, Inc. (6495), RHD Service LLC (0222), Dex Media, Inc. (9762), Dex Media East, Inc. (5763), Dex Media East LLC (4575), Dex Media East Finance Co. (5761), Dex Media West, Inc. (7004), Dex Media West LLC (3487), Dex Media West Finance Co. (7059), Dex Media Service LLC (9647), Business.com, Inc. (9750), and Work.com, Inc. (5224). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 Winstead Drive, Cary, NC 27513.

[2] Capitalized terms and phrases used but not otherwise defined herein have the meanings given to them in the Plan. The rules of interpretation set forth in Article 1.2 of the Plan apply to this Findings of Fact, Conclusions of Law, and Order Confirming the Joint Plan of Reorganization for R.H. Donnelley Corporation and its Subsidiaries. In addition, in accordance with Article 1.1 of the Plan, any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has

WHEREAS, on October 21, 2009, the Bankruptcy Court entered an Order: (I) Approving the Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Debtors' Joint Plan of Reorganization, (III) Scheduling a Hearing to Consider Confirmation of the Debtors' Joint Plan of Reorganization and Establishing Notice and Objection Procedures in Respect Thereof, and (IV) Granting Related Relief [Docket No. 629] (the "Solicitation Order"), by which the Bankruptcy Court, among other things, (i) approved the Disclosure Statement for the Joint Plan of Reorganization for R.H. Donnelley Corporation and its Subsidiaries (the "Disclosure Statement"), (ii) established procedures for the solicitation and tabulation of votes to accept or reject the Plan, (iii) established December 17, 2009 at 4:00 p.m. (Eastern Time) as the deadline by which all Ballots and Master Ballots must have been submitted and received by the Voting Agent (the "Voting Deadline"), (iv) established December 17, 2009 at 4:00 p.m. (Eastern Time) as the deadline by which any objection to Confirmation of the Plan must have been filed with the Court and received by certain parties listed in the Solicitation Order (the "Plan Objection Deadline"), and (v) scheduled a hearing to consider Confirmation of the Plan to commence on January 12, 2010 at 10:00 a.m. (Eastern Time) (the "Confirmation Hearing");

WHEREAS, an affidavit of service was executed by Gina M. Ziegler of The Garden City Group, Inc. ("GCG"), with respect to the mailing of notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and solicitation materials in respect of the Plan in accordance with the Solicitation Order (the "Solicitation and Confirmation AOS") and filed with the Bankruptcy Court on November 19, 2009 [Docket No. 749] and, furthermore, affidavits of service with respect to the publication of the notice, approved by the Bankruptcy Court and as set

---

the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. A copy of the Plan (without the exhibits thereto) is attached hereto as Exhibit A and incorporated herein by reference.

2

forth in the Solicitation Order, (i) in The Wall Street Journal, was executed by Courtney Becker, Advertising Clerk of The Wall Street Journal, on November 24, 2009 and (ii) in USA Today, was executed by Antoinette Chase, principal clerk of USA Today, on November 24, 2009, respectively (collectively, the "Publication AOS"), each of which was filed with the Bankruptcy Court on January 4, 2010 [Docket Nos. 893 and 894];

WHEREAS, on December 7, 2009, the Debtors filed with the Bankruptcy Court the Plan Supplement (as amended, modified or supplemented from time to time) [Docket No. 794] which consisted of the following Exhibits to the Plan: (i) Exhibit 1.1.113 (Litigation Claims); (ii) Exhibit 1.1.123 (New RHDC Notes Indenture and New RHDC Note); (iii) Exhibit 1.1.154 (Registration Rights Agreement); (iv) Exhibit 1.3 (Shared Services Agreement); (v) Exhibit 5.2.1(1) (Second Amended and Restated Certificate of Incorporation of Reorganized RHDC)[3]; (vi) Exhibit 5.2.1(2) (Sixth Amended and Restated By-Laws of Reorganized RHDC); (vii) Exhibit 5.2.1(b)(1) (Form of Amended and Restated Subsidiary Certificate of Incorporation); (viii) Exhibit 5.2.1(b)(2) (Form of Amended and Restated Subsidiary By-Laws); (ix) Exhibit 5.5(A) (Intercreditor Agreement); (x) Exhibit 5.5(B) (Shared Guaranty and Collateral Agreement); (xi) Exhibit 5.5.1(1) (Amended and Restated RHDI Credit Agreement); (xii) Exhibit 5.5.1(2) (Amended and Restated RHDI Lenders Guaranty & Collateral Agreement); (xiii) Exhibit 5.5.2(1) (Amended and Restated DMW Credit Agreement); (xiv) Exhibit 5.5.2(2) (Amended and Restated DMW Lenders Guaranty & Collateral Agreement); (xv) Exhibit 5.5.3(1) (Amended and Restated DME Credit Agreement); (xvi) Exhibit 5.5.3(2) (Amended and Restated DME Lenders Guaranty & Collateral Agreement); (xvii) Exhibit 5.9.1 (Amendment to Certain

---

[3] The draft Second Amended and Restated Certificate of Incorporation of Reorganized RHDC filed with the Plan Supplement has been superseded in all respects by that certain revised Second Amended and Restated Certificate of Incorporation of Reorganized RHDC (filed with the Supplementary PS Documents on January 8, 2010).

3

Employment and Retirement Benefit Agreements); (xviii) Exhibit 5.10 (Management Incentive Plan)[4]; (xix) Exhibit 5.12 (Restructuring Transactions); (xx) Exhibit 6.5 (List of Executory Contracts and Unexpired Leases to be Rejected Pursuant to the Plan); and (xxi) Exhibit 10.8.1 (Summary of Insurance Policies Providing Tail Coverage);

WHEREAS, on December 15, 2009, the Bankruptcy Court entered an order approving a stipulation [Docket No. 827] (the "Stipulation Order"), by and among the Debtors, the Consenting Noteholders and the Unsecured Creditors Committee, providing for the supplemental notice (the "Supplemental Notice") of the filing of the Plan Supplement and a consensual extension of the Voting Deadline for non-Consenting Noteholders in Classes 1E, 1F, 2D, 3E, 4E, 4F and 10E through 16E (the "Non-Consenting Noteholders"), pursuant to which the Bankruptcy Court extended the Voting Deadline solely for the Non-Consenting Noteholders through and including December 28, 2009 at 4:00 p.m. (Eastern Time), and, on December 15, 2009, the Debtors served a copy of the Supplemental Notice upon the Non-Consenting Noteholders through Broadridge and otherwise directly served a copy of the Supplemental Notice upon those nominees not serviced through Broadridge. An affidavit of service executed by Gina M. Ziegler of GCG (the "Supplemental Notice AOS", and, together with the Solicitation and Confirmation AOS and the Publication AOS, the "Affidavits of Service") was filed with the Bankruptcy Court on January 4, 2009 [Docket No. 895];

WHEREAS, on December 17, 2009, three objections to Confirmation of the Plan (collectively, the "Objections") were timely filed before the Plan Objection Deadline by: (i) the Douglas County Treasurer, (ii) Jack B. Corwin, as Trustee of The Jack B. Corwin Revocable

---

[4] The draft Management Incentive Plan filed with the Plan Supplement has been superseded in all respects by that certain Revised Management Incentive Plan (as defined below) (filed with the Supplementary PS Documents on January 8, 2010).

4

Trust, and Charitable Remainder Stewardship Company of Nevada, as Trustee of The Jack B. Corwin 2006 Charitable Remainder Unitrust (the "Corwin Objection"); and (iii) the New York State Department of Taxation.  In addition, each of the following filed untimely objections after the Plan Objection Deadline: (i) Plaintiff Donald Biggerstaff and the putative class of shareholders asserting certain securities fraud claims in a pending action in the United States District Court for the District of Delaware filed an untimely objection at 10:04 p.m. (Eastern Time) on December 17, 2009 (the "Biggerstaff Objection"), and (ii) Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund, Private Scavenger and Garage Attendants Pension Trust Fund and Textile Maintenance and Laundry Craft Pension Fund filed an untimely joinder to both the Corwin Objection and Biggerstaff Objection on December 24, 2009.  In addition, on January 5, 2010, Wilmington Trust Company, solely in its capacity as Notes Indenture Trustee for the DMW Senior Notes, filed a response and reservation of rights with respect to the Confirmation of the Plan;[5]

WHEREAS, on December 30, 2009, the Bankruptcy Court entered an Order Fixing Cure Amounts and Providing Notice of Assumption of Certain Executory Contracts and Unexpired Leases by an Affiliated Reorganized Debtor pursuant to the Debtors' Plan of Reorganization [Docket No. 889] (the "Assumption Notice and Cure Amounts Order"), pursuant to which the Bankruptcy Court granted the Debtors' Motion to Fix Cure Amounts and Provide Notice of Assumption of Certain Executory Contracts and Unexpired Leases by an Affiliated Reorganized Debtor Pursuant to the Debtors' Plan of Reorganization (the "Assumption Notice and Cure Amounts Motion"), and, among other things, ordered that (i) the cure amounts as more specifically described in the Assumption Notice and Cure Amounts Motion (the "Cure

---

[5] The Debtors agreed to provide Wilmington Trust Company an extension to the Plan Objection Deadline through January 5, 2010.

Amounts") shall be fixed at the amounts set forth on Exhibits B through L attached to the Assumption Notice and Cure Amounts Order and (ii) the Debtors are authorized, pursuant to section 365 and the terms of the Plan, to take all reasonable and necessary steps to cause the applicable Assumed Contracts and Leases (and the rights and obligations thereunder) of any Debtor (each a "Predecessor Debtor") that, pursuant to the Restructuring Transactions described in Section 5.12 of the Plan and Exhibit 5.12 of the Plan (filed with the Plan Supplement), shall or may be merged into another affiliated Reorganized Debtor (each a "Surviving Reorganized Debtor") on or after the Effective Date, to be assumed by, and revest in, each such Surviving Reorganized Debtor, as of the Effective Date, pursuant to the terms of the Plan and the Confirmation Order;

WHEREAS, on January 8, 2010, GCG filed its Declaration of Patrick M. Leathem of the Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Results of Voting with Respect to the Joint Plan of Reorganization for the Debtors Under Chapter 11 of the Bankruptcy Code [Docket No. 919] (the "GCG Voting Affidavit").

WHEREAS, on January 8, 2010, the Debtors filed a Notice of Technical Supplementation of Certain Plan Supplement Documents [Docket No. 915], which consisted of the supplementation of the following Exhibits to the Plan: (i) Exhibit 5.2.1(1): (the Second Amended and Restated Certificate of Incorporation of Reorganized RHDC)[6], (ii) Exhibit 5.2.2: (Initial Directors and Officers of Reorganized RHDC), and (iii) Exhibit 5.10: ((a) that certain revised Management Incentive Plan (the "Revised Management Incentive Plan")[7], (b) the

---

[6] This revised Second Amended and Restated Certificate of Incorporation of Reorganized RHDC supersedes in all respects the initial draft Second Amended and Restated Certificate of Incorporation of Reorganized RHDC filed with the Plan Supplement on December 7, 2009.
[7] The Revised Management Incentive Plan supersedes in all respects the initial draft Management Incentive Plan filed with the Plan Supplement on December 7, 2009.

Addendum to R.H. Donnelley Corporation Equity Incentive Plan, and (c) the Stock Appreciation Right Agreement, (collectively, the "MIP Documents")) (collectively, the "Supplementary PS Documents");

WHEREAS, on January 8, 2010, the Debtors filed a memorandum of law in support of Confirmation of the Plan and in response to certain of the Objections [Docket No. 921] (the "Memorandum of Law");

WHEREAS, the affidavits of Mark W. Hianik [Docket No. 918], Warren R. Stearns [Docket No. 916] (the "Stearns Affidavit") and William J. Fasel [Docket No. 917], together with various exhibits and attachments thereto, were submitted in support of the Plan (and together with the GCG Voting Affidavit, the "Affidavits of Support");

WHEREAS, the Bankruptcy Court has reviewed the Plan, the Disclosure Statement, the Solicitation Order, the Affidavits of Service, the Objections, the Memorandum of Law, the Affidavits of Support, and the other pleadings and papers before the Bankruptcy Court in connection with the Confirmation of the Plan;

WHEREAS, the Bankruptcy Court has (i) heard the statements of counsel in support of Confirmation and (ii) considered the Affidavits submitted into evidence, all as reflected in the record made at the Confirmation Hearing;

WHEREAS, the Bankruptcy Court has considered all of the evidence submitted at the Confirmation Hearing;

WHEREAS, the Bankruptcy Court has taken judicial notice of all of the papers and pleadings on file and all prior Court hearings and other matters in these Chapter 11 Cases;

7

NOW, THEREFORE, based upon the Court's review of the Plan, the Disclosure Statement, the Solicitation Order, the GCG Voting Affidavit, the Affidavits of Service, the Objections, the Memorandum of Law, the Affidavits of Support, and upon (i) all of the evidence proffered or adduced and arguments of counsel made at the Confirmation Hearing and (ii) the entire record of these Chapter 11 Cases, and after due deliberation thereon, discussions made on the record at the Confirmation Hearing and good cause appearing therefor, this Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders with respect to Confirmation of the Plan (the "Confirmation Order"):

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW.[8]

### A. JURISDICTION AND VENUE.

On the Petition Date, the Debtors commenced these Chapter 11 Cases in good faith by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Each Debtor was and is qualified to be a debtor under section 109 of the Bankruptcy Code. The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Court has subject matter jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue was proper as of the Petition Date and continues to be proper before this Court as of the date hereof pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[8] The Confirmation Order constitutes the Bankruptcy Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is referred to as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is referred to as a finding of fact.

8

B.  **TECHNICAL SUPPLEMENTATION OF CERTAIN PLAN SUPPLEMENT DOCUMENTS.**

The technical supplementation of certain Plan Supplement documents included in the Supplementary PS Documents filed with the Bankruptcy Court on January 8, 2010, comply with all applicable provisions of the Bankruptcy Code. Such technical supplementation is neither material nor adversely changes the treatment of any Holders of Claims or Interests under the Plan, and is hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.

C.  **JUDICIAL NOTICE.**

This Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during these Chapter 11 Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

D.  **BURDEN OF PROOF.**

The Debtors, as proponents of the Plan, have the burden of proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence and the Debtors have met that burden as further found and determined herein.

E.  **SOLICITATION AND NOTICE.**

The Plan, the Disclosure Statement, the Ballots, and all related materials (collectively, the "Solicitation Packages") were transmitted and served as evidenced by the Affidavits of Service, and such transmittal and service of the Solicitation Packages constitutes due and sufficient notice of the Plan, the Confirmation Hearing, and the deadlines for submitting Ballots accepting or

DB02:9138743.1                                                                068387.1001

rejecting the Plan and for filing objections to Confirmation of the Plan, and such notice was adequate and sufficient under the circumstances, was given in compliance with Bankruptcy Rules 2002, 3017 and 3020 and the Solicitation Order, and no other or further notice is or shall be required. All parties in interest had a full and fair opportunity to appear and be heard at the Confirmation Hearing.

### F. PUBLICATION NOTICE.

In accordance with Bankruptcy Rules 2002(1) and 3017(d) and the Solicitation Order, and as evidenced by the Publication AOS, the Debtors published a form of the Confirmation Hearing Notice once each in the USA Today and The Wall Street Journal on November 24, 2009.

### G. ADEQUACY OF NOTICE.

The Disclosure Statement, the Plan, the Ballots and the Confirmation Hearing Notice were transmitted and served in compliance with the Solicitation Order and the Bankruptcy Rules and such transmittal and service constituted adequate and sufficient notice for the Confirmation Hearing. Furthermore, the Plan Supplement and the Supplementary PS Documents, and any amendments or modifications thereto or to the Exhibits to the Plan, were filed and served in compliance with the Bankruptcy Rules. All parties in interest had a full and fair opportunity to appear and be heard at the Confirmation Hearing and no other or further notice is or shall be required.

### H. BAR DATE.

On September 11, 2009, the Court entered an order (the "Bar Date Order") [Docket No. 439] establishing October 30, 2009 as the deadline to file proofs of claim for all Claims against the Debtors that arose prior to the Petition Date and establishing a governmental unit bar date of November 24, 2009.

10

## I.    GOOD FAITH SOLICITATION, NO REQUIREMENT FOR RESOLICITATION

Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. Based on the record in these Chapter 11 Cases, the Debtors, the Reorganized Debtors, the members of the Unsecured Creditors Committee, the Prepetition Lenders, the Prepetition Lenders Agents, the Consenting Noteholders, the Notes Indenture Trustees, and each of their respective Related Persons have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and Bankruptcy Rules in compliance with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and, accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X of the Plan. Based upon the Court's review of the amendments, modifications and/or supplementation embodied in the Plan, the Plan Supplement and the Supplementary PS Documents, no further solicitation or resolicitation of any holders of Claims or Interests is necessary.

## J.    PROPRIETY OF VARIOUS AGREEMENTS AND PLAN RELATED DOCUMENTS.

1.    Based on the evidentiary record presented at the Confirmation Hearing, the terms of each of the Plan Support Agreements and Plan Term Sheets (appended to the Disclosure Statement as Exhibits B and C), in each case as incorporated in the Plan, are fair and reasonable and are in accordance with applicable United States Supreme Court and Third Circuit law.

11

2.     In light of all of the circumstances and the record in these Chapter 11 Cases, each of the Restructuring Transactions, each of the other transactions in connection with the implementation of the Plan, as identified in Article V of the Plan, and each of the transactions contemplated by or referenced in the Plan, the Plan Supplement, the Supplementary PS Documents, and/or any other Plan Related Documents (as defined in the Plan) is integral to the terms, conditions and settlements contained in the Plan and is critical to the effectuation of the purposes of the Plan. All contracts, instruments, releases, agreements and documents related to, or necessary to implement, effectuate and consummate, the Plan, including, without limitation: (a) each of the Plan Support Agreements and Plan Term Sheets; (b) the New RHDC Notes Indenture and New RHDC Notes; (c) the Registration Rights Agreement; (d) the Shared Services Agreement; (e) each of the Second Amended and Restated Certificate of Incorporation of Reorganized RHDC, Sixth Amended and Restated By-Laws of Reorganized RHDC, Form of Amended and Restated Subsidiary Certificate of Incorporation and Form of Amended and Restated Subsidiary By-Laws; (f) Intercreditor Agreement; (g) Shared Guaranty and Collateral Agreement; (h) each of the Amended and Restated Credit Documents; (i) the Employee Benefit Plans, the Employee Pension Plans, and the Employment and Retirement Benefit Agreements; (j) the MIP Documents; (k) each of the contracts, instruments, agreements and documents to be executed and delivered in connection with the Restructuring Transactions; and (l) the insurance policies providing tail coverage as described in greater detail on Exhibit 10.8.1 of the Plan (filed with the Plan Supplement), are valid, proper and reasonable under the circumstances and due and sufficient notice thereof has been provided in connection with, among other things, approval of the Disclosure Statement and Confirmation of the Plan.

### K.     GOOD FAITH NEGOTIATION, IMPLEMENTATION AND CONSUMMATION.

Each of the Debtors, the Reorganized Debtors, the members of the Unsecured Creditors Committee, the Prepetition Lenders, the Prepetition Agents, the Consenting Noteholders, the Notes Indenture Trustees, as applicable, in their respective capacities, and each of their respective Related Persons participated in good faith in formulating, negotiating (at arm's length), preparing, disseminating, implementing, administering, soliciting, confirming and/or consummating the Plan, the Disclosure Statement, the Plan Supplement, the Supplementary PS Documents, the Restructuring Transactions, the Plan Term Sheets, the Plan Support Agreements and each of the other contracts or instruments, releases or other agreements or documents created or entered into in connection with the Plan or necessary to implement, effectuate and consummate the Plan, including, without limitation: (a) each of the Plan Support Agreements and Plan Term Sheets; (b) the New RHDC Notes Indenture and New RHDC Notes; (c) the Registration Rights Agreement; (d) the Shared Services Agreement; (e) each of the Second Amended and Restated Certificate of Incorporation of Reorganized RHDC, Sixth Amended and Restated By-Laws of Reorganized RHDC, Form of Amended and Restated Subsidiary Certificate of Incorporation and Form of Amended and Restated Subsidiary By-Laws; (f) the Intercreditor Agreement; (g) the Shared Guaranty and Collateral Agreement; (h) each of the Amended and Restated Credit Documents; (i) the Employee Benefit Plans, the Employee Pension Plans, and the Employment and Retirement Benefit Agreements; (j) the MIP Documents; (k) each of the contracts, instruments, agreements and documents to be executed and delivered in connection with the Restructuring Transactions; and (l) the insurance policies providing tail coverage as described in greater detail on Exhibit 10.8.1 of the Plan (filed with the Plan Supplement). Each of the Debtors, the Reorganized Debtors, the members of the Unsecured Creditors Committee, the Prepetition Lenders, the Prepetition Agents, the Consenting

13

Noteholders, the Notes Indenture Trustees and each of their respective Related Persons also participated in good faith in each of the actions taken to bring about, and to satisfy each of the conditions precedent to, Confirmation and consummation of the Plan. Accordingly, each of the Debtors, the Reorganized Debtors, the members of the Unsecured Creditors Committee, the Prepetition Lenders, the Prepetition Agents, the Consenting Noteholders, the Notes Indenture Trustees and their respective Related Persons are and shall be entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the provisions set forth in Article X of the Plan. In so determining, the Court has examined, among other things, the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the record of this proceeding and the Plan and all related pleadings, Exhibits, hearings and statements of record regarding Confirmation.

### L. ASSUMPTION OF EXECUTORY AND POSTPETITION CONTRACTS AND UNEXPIRED LEASES AND THE INDEMNIFICATION OBLIGATIONS.

1. The assumption by the Debtors of all existing executory and postpetition contracts and unexpired leases, with the sole exception of any contracts or leases (i) previously rejected by the Debtors, (ii) previously expired or terminated in accordance with its terms, or (iii) set forth on Exhibit 6.5 to the Plan (filed with the Plan Supplement), is both beneficial and necessary to the Debtors' and Reorganized Debtors' business operations upon and subsequent to emergence from chapter 11. (Hianik Aff. ¶ 34.) The assumption of each of these executory and postpetition contracts and unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code and the Plan is a sound exercise of the Debtors' independent business judgment and is in the best interest of the Debtors, their estates and their creditors. Id. The assumption by, assignment to, and revesting in, each relevant Surviving Reorganized Debtor of the applicable Assumed Contracts and Leases (and the rights and obligations thereunder) of each relevant

068387.1001

Predecessor Debtor, pursuant to section 365 of the Bankruptcy Code, the terms of the Plan and the Assumption Notice and Cure Amounts Order, is also a sound exercise of the Debtors' business judgment and is in the best interest of the Debtors, their estates and their creditors. Id. Based upon, among other things, the Reorganized Debtors' anticipated financial wherewithal after the Effective Date, including, without limitation, the operating cash and liquidity available to the Reorganized Debtors under the Amended and Restated Credit Documents to fund their post-emergence business operations, each Reorganized Debtor that is assuming a contract or lease pursuant to the Plan, or to which a contract or lease is being or shall be assigned pursuant to the Plan or the Restructuring Transactions, has demonstrated that it will be fully capable of performing under the terms and conditions of the respective contract or lease to be assumed or assumed and assigned on a going forward basis. (Hianik Aff. ¶ 34.) In addition, the assumption of all respective obligations of RHDC and the other Debtors to indemnify and reimburse persons who are or were directors, officers, managers, or employees and agents of the Debtors, whether pursuant to certificates or articles of incorporation, codes of regulation, by-laws, limited liability company agreements, limited liability partnership agreements, applicable state or non-bankruptcy law, or specific agreement or any combination of the foregoing, pursuant to Section 10.8 of the Plan or the terms of the Confirmation Order and the preservation and survival of such obligations on and after the Effective Date are of fundamental importance to the Debtors' reorganization process, are a sound exercise of the Debtors' business judgment and are in the best interest of the Debtors, their estates and their creditors. (Hianik Aff. ¶ 36.)

2.    Moreover, except as otherwise provided in the Plan or an order of the Court entered prior to the Effective Date, as of the Effective Date, all of the Debtors' postpetition contracts and leases (if any) entered into by one or more of the Debtors after the Petition Date

15

shall be treated as though they are executory contracts or unexpired leases under the Plan and the Confirmation Order.

## M. EXEMPTIONS FROM TAXATION.

Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, including, without limitation, the New RHDC Common Stock, the New RHDC Notes, and any New RHDC Common Stock (or other equity interests, grants, rights or other options) issued under or in connection with the MIP Documents; (b) the creation of any mortgage, deed of trust, Lien, pledge or other security interest, including, without limitation, any mortgage, deed of trust, Lien, pledge or other security interest under or in connection with any of the Amended and Restated Credit Documents and Shared Guaranty and Collateral Agreement; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under or in connection with the Plan, including, without limitation, any merger agreements, agreements of consolidation, restructuring disposition, liquidation or dissolution, deeds, bills of sale, and transfer of tangible property, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the appropriate state or local government officials or agents are hereby directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## N. EXEMPTIONS FROM SECURITIES LAWS.

16

The issuance, distribution, transfer or exchange of (a) the New RHDC Common Stock and the New RHDC Notes and (b) any other stock, options, warrants, conversion rights, rights of first refusal or other related rights, contractual, equitable or otherwise, issued, authorized or reserved under or in connection with the MIP Documents or the Plan, shall be, and shall be deemed to be, exempt from registration under any applicable federal or state securities laws to the fullest extent permissible under applicable non-bankruptcy law and under bankruptcy law, including, without limitation, section 1145(a) of the Bankruptcy Code. Without limiting the effect of section 1145 of the Bankruptcy Code, all documents, agreements and instruments entered into on or as of the Effective Date contemplated by or in furtherance of the Plan, including, without limitation, each of the Exhibits to the Plan (filed with the Plan Supplement), the Supplementary PS Documents, any of the Plan Related Documents, and the Restructuring Transactions, shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto.

## O. OBJECTIONS TO THE PLAN.

The Court hereby determines that all objections to the Plan not otherwise withdrawn or consensually resolved at or prior to the Confirmation Hearing shall be, and hereby are, overruled for the reasons the Bankruptcy Court articulated on the record at the Confirmation Hearing and/or set forth in the Debtors' Memorandum of Law in support of Confirmation of the Plan.

## P. COMPREHENSIVE SETTLEMENT OF CLAIMS AND CONTROVERSIES.

1. Based upon the Confirmation Brief, the Affidavits, the representations and arguments of counsel for the Debtors and all other testimony given or proffered at the

Confirmation Hearing or prior hearings and the full record of these Chapter 11 Cases, the findings and conclusions of which are hereby incorporated by reference as if fully set forth herein, the Court hereby finds that, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan, including each of the injunctions, releases, exculpations, indemnifications and discharges set forth in Sections 10.1, 10.2, 10.3, 10.4, 10.5, and 10.8 of the Plan, constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Claim or Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Interest. (Hianik Aff. ¶¶ 16, 32.)

2. Moreover, based upon the Confirmation Brief, the Affidavits, the representations and arguments of counsel for the Debtors and all other testimony given or proffered at the Confirmation Hearing or prior hearings and the full record of these Chapter 11 Cases, the Court hereby finds that each of the Plan Support Agreements and Plan Term Sheets (appended to the Disclosure Statement as Exhibit B and C), the Plan, the Plan Supplement, the Supplementary PS Documents, the Plan Related Documents and all of the other settlements, compromises and resolutions set forth in or contemplated by the Plan or any of the Plan Related Documents constitutes a fair and reasonable, good faith settlement and compromise of all claims or controversies relating to the rights of holders of Claims against and Interests in the Debtors, including each of the Prepetition Lenders, the Prepetition Agents, the Consenting Noteholders and the parties to the Plan Support Agreements and Plan Term Sheets, and their respective constituents. (Hianik Aff. ¶ 16.)

**Q. ESTIMATED VALUE OF PROPERTY TO BE DISTRIBUTED TO HOLDERS OF DMW SENIOR NOTES NOTEHOLDERS CLAIMS AT OR**

18

1.     Pursuant to Section 3.5.5(d) of the Plan, the Holders of DMW Senior Notes Noteholders Claims have an Allowed Claim in the aggregate amount of $394 million, plus accrued but unpaid interest, as of the Petition Date.  Subject to the qualifications and assumptions described in more detail in the Stearns Affidavit and in the Disclosure Statement (including, without limitation, Article VIII.B. thereof), and based upon, among other things, Lazard's estimated range of consolidated value of the New RHDC Common Stock to be distributed to the Holders of DMW Senior Notes Noteholders Claims upon emergence, Lazard's consideration of the potential value of the New RHDC Notes in the aggregate amount of $300 million to be distributed to the Holders of DMW Senior Notes Noteholders Claims upon emergence, the implied market value of the DMW Senior Notes based upon recent trading metrics, and the potential equity value of the New RHDC Common Stock upon emergence implied by the recent trading metrics of the Notes (other than the DMW Senior Notes), Lazard believes that, considering the totality of the circumstances, as of the projected emergence date at the end of January 2010, the value of the property (i.e., the New RHDC Common Stock and the New RHDC Notes) to be distributed to Holders of DMW Senior Notes Noteholders Claims under the Plan will not be less than 100% of the amount of the Allowed Claims of such Holders. (Stearns Aff. ¶25.)


**R.     APPROVAL OF THE DISCHARGES, RELEASES, INJUNCTIONS, INDEMNIFICATIONS AND EXCULPATIONS PROVIDED UNDER THE PLAN.**

1.     In approving the discharges, releases, injunctions, indemnifications and exculpations provided under the Plan, including those set forth in <u>Sections</u> 10.1, 10.2, 10.3, 10.4,

19

10.5 and 10.8 of the Plan, this Court considered, among other things, (1) the identity of interest between the Debtors and certain third parties (including the current and former officers and directors of the Debtors) in connection with the negotiation and effectuation of the Plan Support Agreements and the Plan Term Sheets, the negotiation, documentation and implementation of the Plan, the Plan Supplement, the Supplemental PS Documents and the other Plan Related Documents, and the successful and expeditious reorganization of the Debtors; (2) the substantial contributions made by the relevant non-Debtors to the Debtors' reorganization in formulating, negotiating at arm's length, preparing, disseminating, implementing, administering, soliciting, confirming and/or consummating the Plan; (3) the integral nature of the discharges, releases, injunctions, indemnifications and exculpations to the Plan as a whole, the Debtors' reorganization efforts and the continued success of the Reorganized Debtors; (4) the acceptance of the Plan, which gives effect to the discharges, releases, injunctions, indemnifications and exculpations therein, by an overwhelming majority of the holders of Claims, as set forth in the GCG Voting Affidavit; (5) provision in the Plan for the payment of all or a substantial portion of the Claims of those classes of creditors potentially affected by the discharges, releases, injunctions, indemnifications and exculpations; and (6) the fact that the Plan, which gives effect to the discharges, releases, injunctions, indemnifications and exculpations therein, is the product of extensive arm's-length negotiations among the Debtors, the Consenting Noteholders, the Prepetition Lenders, the Prepetition Agents and the members of the Unsecured Creditors Committee and each of their respective Related Parties.

2. Moreover, each of the discharges, releases, injunctions, indemnifications and exculpations provided under the Plan, including those set forth in Sections 10.1, 10.2, 10.3, 10.4, 10.5 and 10.8 of the Plan, is (1) integral to the terms, conditions and settlements contained

20

in the Plan; (2) fair, equitable, reasonable and in the best interest of the Debtors; (3) appropriate in connection with the reorganization of the Debtors; and (4) supported by fair and reasonable consideration. (Hianik Aff. ¶ 32.) In light of all of the circumstances and the record in these Chapter 11 Cases, each of the discharges, releases, injunctions, indemnifications and exculpations provided under the Plan is fair and reasonable to all parties in interest. In addition, each of the discharge, release, injunctive, indemnification and exculpation provisions set forth in the Plan and this Confirmation Order is: (i) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated into the Plan; (iv) beneficial to, and in the best interests of, the Debtors, their estates and their creditors; (v) critical to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to each of the Debtors; and (vi) consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

2. The entirety of the Plan, including the release, injunction, indemnification, exculpation, discharge, assumption and related provisions, has been reviewed by senior management of the Company with the Board of Directors of RHDC. (Hianik Aff. ¶ 32.) In addition, the scope and identity of the Released Parties that are the subject of, among other things, the exculpation and release provisions set forth in the Plan is appropriate in light of, among other things, the significant roles played by various of the Released Parties in connection with the negotiation and execution of the Plan Related Documents including, without limitation, the Plan Support Agreements, Plan Term Sheets, the Disclosure Statement, the Plan, the Plan Supplement, the Supplementary PS Documents, the Plan Related Documents, and each of the

21

documents and agreements attached as Exhibits to the Plan, each of which is instrumental to the Debtors' emergence from chapter 11. (Hianik Aff. ¶¶ 33.)

## S. GCG VOTING AFFIDAVIT.

1. As evidenced by the GCG Voting Affidavit, all procedures used to distribute solicitation materials to the applicable holders of Claims and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Delaware, and all other applicable rules, laws and regulations.

2. As described more fully in the GCG Voting Affidavit, every Impaired Class that was entitled to submit a Ballot and was populated with known or existing Holders of Claims, voted overwhelmingly in favor of the Plan, as follows:

| Description of Class | Class Designation |
| --- | --- |
| Noteholders Claims | 1E (RHDC), 2D (DMI), 3E (RHDI), 4E (DMW Senior Notes), 4F (DMW Senior Subordinated Notes) |
| RHDI Noteholders Guaranty Claims | 1F (RHDC), 10E through 16E (RHDI Guarantor Debtors) |
| Prepetition Lenders Claims | 3D (RHDI), 4D (DMW), 5D (DME) |
| Prepetition Lenders Guaranty Claims | 1D (RHDC), 6D and 7D (DMW Guarantor Debtors), 8D and 9D (DME Guarantor Debtors), and 10D through 16D (RHDI Guarantor Debtors) |
| Convenience Claims | 1C (RHDC), 2C (DMI), 3C (RHDI), 4C (DMW), 5C (DME), 6C and 7C (DMW Guarantor Debtors), 8C and 9C (DME Guarantor Debtors) 10C through 16C (RHDI Guarantor Debtors), 17C through 19C (Non-Guarantor Debtors other than RHD Service LLC) |
| General Unsecured Claims | 1G (RHDC), 2E (DMI), 3F (RHDI), 4G (DMW), 5E (DME), 6E and 7E (DMW Guarantor Debtors), 8E and 9E (DME Guarantor Debtors), 10F through 16F (RHDI Guarantor Debtors), 17D through 19D (Non-Guarantor Debtors other than RHD Service LLC) |
| Intercompany Claims | 1H (RHDC), 2F (DMI), 3G (RHDI), 4H (DMW), 5F (DME), 6F and 7F (DMW Guarantor Debtors), 8F and 9F (DME Guarantor Debtors), 10G through 16G (RHDI Guarantor Debtors), 17E through 19E (Non-Guarantor Debtors other than RHD Service LLC), 20A (RHD Service LLC) |

**T.  SATISFACTION OF CONDITIONS TO CONFIRMATION.**

Each of the conditions precedent to Confirmation of the Plan, as set forth in Section 9.1 of the Plan, has been satisfied and/or waived. Furthermore, each of the conditions precedent to the occurrence of the Effective Date, as set forth in Section 9.2 of the Plan, has been satisfied, is reasonably likely to be satisfied or is reasonably likely to be waived in accordance with Section 9.3 of the Plan on or prior to the Effective Date.

**U.  COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE.**

### A.  Section 1129(a)(1) — Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.

The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code. The Plan fully complies with each requirement of section 1123(a) of the Bankruptcy Code.

#### a.  Sections 1122 and 1123(a)(1)-(4) — Classification and Treatment of Claims and Interests.

1.  The Plan constitutes a separate plan of reorganization for each of the Debtors. (Plan § 3.1.1(b)) In accordance with section 1122(a) of the Bankruptcy Code, Article III of the Plan classifies each Claim against and Interest in the Debtors into a Class containing only substantially similar Claims or Interests. (Plan Art. III.)

2.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Article III of the Plan properly classifies all Claims and Interests that require classification. In particular, Article III of the Plan segregates into separate classes with respect to each applicable Debtor Priority Non-Tax Claims (Classes 1A through 19A), Other Secured Claims (Classes 1B through 19B), Convenience Claims (Classes 1C through 19C), Noteholders Claims (Classes 1E, 2D, 3E,

4E, 4F), RHDI Noteholders Guaranty Claims (Classes 1F, 10E through 16E), Prepetition

Lenders Claims (Classes 3D, 4D, 5D), Prepetition Lenders Guaranty Claims (Classes 1D, 6D

through 16D), General Unsecured Claims (Classes 1G, 2E, 3F, 4G, 5E through 9E, 10F through

16F, 17D through 19D), Intercompany Claims (Classes 1H, 2F, 3G, 4H, 5F through 9F, 10G

through 16G, 17E through 19E, and 20A), RHDC Interests (Class 1I), and Interests in Debtors

Other Than RHDC (Classes 2G, 3H, 4I, 5G through 9G, 10H through 16H, 17F through 19F, and

20B). (Hianik Aff. ¶12.)  The number of classes reflects the diverse classification of those

Claims against and Interests in the various Debtors, and the legal rights under the Bankruptcy

Code of each of the holders of Claims or Interests within that Class. (Hianik Aff. ¶12.)

      3.     In accordance with section 1123(a)(2) of the Bankruptcy Code, <u>Article</u> III

of the Plan identifies and describes each Class of Claims or Interests that is not impaired under

the Plan.  In particular, <u>Article</u> III of the Plan indicates that Claims and Interests in Classes 1A

through 19A (Priority Non-Tax Claims), 1B through 19B (Other Secured Claims), 2G, 3H, 4I,

5G through 9G, 10H through 16H, 17F through 19F, and 20B (Interests in Debtors Other Than

RHDC) are not impaired under the Plan.  (Plan Art. III.)

      4.     In accordance with section 1123(a)(3) of the Bankruptcy Code, <u>Article</u> III

of the Plan identifies and describes any Class of Claims or Interests that is impaired under the

Plan.  In particular, <u>Article</u> III of the Plan specifies that Claims in Classes 1C through 19C

(Convenience Claims), 1E, 2D, 3E, 4E, 4F (Noteholders Claims) 1F, 10E through 16E

(Noteholders Guaranty Claims), 3D, 4D, 5D (Prepetition Lenders Claims), 1D, 6D through 16D

(Prepetition Lenders Guaranty Claims), 1G, 2E, 3F, 4G, 5E through 9E, 10F through 16F, 17D

through 19D (General Unsecured Claims), 1H, 2F, 3G, 4H, 5F through 9F, 10G through 16G,

24

17E through 19E, 20A (Intercompany Claims), and 1I (RHDC Interests) are impaired under the Plan. (Plan Art. III.)

5.    In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Interest of a particular Class unless the holder of such a Claim or Interest agrees to less favorable treatment. (Plan § 3.2.1(b).)

6.    Due to their entitlement to priority status under section 507(a) of the Bankruptcy Code, Priority Non-Tax Claims have been separately classified in Classes 1A through 19A. (Plan Art. III)  Based on their secured status, Other Secured Claims against each of the Debtors have been separately classified in Classes 1B through 19B.  (Plan Art. III) Convenience Claims against each of the Debtors have been separately classified in Classes 1C through 19C for administrative convenience, as authorized under section 1122(b) of the Bankruptcy Code.  Noteholders Claims have been separately classified in Classes 1E, 2D, 3E, 4E, and 4F because of, among other things, the Noteholders' unique claims under the relevant Notes, Notes Indentures and related documents.  RHDI Noteholders Guaranty Claims have been separately classified in Classes 1F, and 10E through 16E because of, among other things, the Noteholders' unique claims under the RHDI Noteholders Guaranty.  Prepetition Lenders Claims have been separately classified in Classes 3D, 4D, and 5D because of, among other things, the Prepetition Lenders' unique claims under those certain prepetition credit agreements and related documents.  Prepetition Lenders Guaranty Claims have been separately classified in Classes 1D and 6D through 16D because of, among other things, the Prepetition Lenders' unique claims under the DMW Lenders Guaranty & Collateral Agreement, DME Lenders Guaranty & Collateral Agreement and RHDI Lenders Guaranty & Collateral Agreement.  General Unsecured Claims have been separately classified in Classes 1G, 2E, 3F, 4G, 5E through 9E, 10F through

25

16F, and 17D through 19D. Due to their unique nature, Intercompany Claims have been separately classified in Classes 1H, 2F, 3G, 4H, 5F through 9F, 10G through 16G, 17E through 19E, and 20A. RHDC Interests and the Interests in Debtors Other Than RHDC are each separately classified as Classes 1I, 2G, 3H, 4I, 5G through 9G, 10H through 16H, 17F through 19F, and 20B. (Hianik Aff. ¶12.)

7.    Accordingly, the Plan satisfies the requirements of sections 1122 and 1123(a)(1)-(4).

**b.    Section 1123(a)(5) — Adequate Means for Implementation of the Plan.**

In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan, including Article V of the Plan, provides adequate means for its implementation, including, among other things: (i) except as otherwise provided under the Plan or the Restructuring Transactions, the continued corporate existence of the Debtors and the vesting of assets in the Reorganized Debtors under Section 5.6 of the Plan; (ii) the adoption of the corporate constituent documents that will govern the Reorganized Debtors and the identification of the initial boards of directors of the Reorganized Debtors as provided in Sections 5.2.1 and 5.2.2 of the Plan, respectively; (iii) the issuance of new securities for distribution in accordance with the terms of the Plan, as detailed in Section 5.3 of the Plan; (iv) the entry by the Reorganized Debtors into the Amended and Restated Credit Documents, as detailed in Section 5.5 of the Plan; (v) the cancellation of prepetition notes, instruments, debentures, and RHDC Interests (in each case, to the extent provided in the Plan as detailed in Section 5.7); (vi) the consummation of any Restructuring Transactions in connection with Section 5.12 of the Plan, including the Restructuring Transactions set forth on Exhibit 5.12 of the Plan (filed with the Plan Supplement); (vii) the cancellation of any Lien securing any Other Secured Claim (to the extent provided for in

DB02:9138743.1

068387.1001

the Plan), as detailed in Section 5.8 of the Plan; (viii) the retention of certain rights of action by

the Reorganized Debtors pursuant to Section 5.13 of the Plan; (ix) the various discharges,

releases, injunctions, indemnifications and exculpations provided in Article X of the Plan; (x) the

continuation of certain employee compensation and benefit programs and the adoption of the

MIP Documents, as described in Sections 5.9 and 5.10 of the Plan; and (xi) the assumption,

assumption and assignment or rejection of executory contracts and unexpired leases to which any

Debtor is a party, as stated in Article VI of the Plan. Accordingly, the provisions in the Plan

comply with section 1123(a)(5) of the Bankruptcy Code.

> **c.     Section 1123(a)(6) — Prohibition Against the Issuance of Nonvoting Equity Securities and Adequate Provisions for Voting Power of Classes of Securities.**

In accordance with section 1123(a)(6) of the Bankruptcy Code, the Reorganized

Debtors' charters, bylaws or similar constituent documents (including those set forth as Exhibits

5.2.1(1) and 5.2.1(2) to the Supplementary PS Documents) contain provisions prohibiting the

issuance of nonvoting equity securities and provide for the appropriate distribution of voting

power among all classes of equity securities authorized for issuance. In particular, Section

5.2.1(a) of the Plan provides that the Certificates of Incorporation of each of the Reorganized

Debtors will, among other things, prohibit the issuance of nonvoting equity securities to the

extent required under section 1123(a) of the Bankruptcy Code. (Plan § 5.2.1(a).) This

prohibition is stated in the Second Amended and Restated Certificate of Incorporation of

Reorganized RHDC filed as Exhibit 5.2.1(1) of the Plan (filed with the Supplementary PS

Documents). (Plan Ex. 5.2.1(1).) Accordingly, the provisions in the Plan comply with section

1123(a)(6) of the Bankruptcy Code.

> **d.     Section 1123(a)(7) — Selection of Directors and Officers in a Manner Consistent with the Interests of Creditors and Equity Security Holders and Public Policy.**

27

1.     In accordance with section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan and the Reorganized Debtors' charters, bylaws and similar constituent documents regarding the manner of selection of officers and directors of the Reorganized Debtors are consistent with the interests of creditors and equity security holders and with public policy. (Hianik Aff. ¶ 13(vi).) In accordance with Section 5.2.2 of the Plan and as listed on Exhibit 5.2.2 of the Plan (filed with the Supplementary PS Documents), the initial board of directors of Reorganized RHDC shall consist of the following seven (7) directors: (i) David C. Swanson, (ii) Alan F. Schultz, (iii) Mark McEachen, (iv) Jonathan B. Bulkeley, (v) W. Kirk Liddell, (vi) Richard Kuersteiner, and (vii) Eugene I. Davis.  On the Effective Date, consistent with Section 5.2.2 of the Plan, the term of any current directors of the board of directors of RHDC not identified as directors of Reorganized RHDC on Exhibit 5.2.2 to the Plan (filed with the Supplementary PS Documents) shall expire, and such persons shall be deemed to have been removed as a director on the Effective Date.  In accordance with the Plan, all existing executive officers of Reorganized RHDC shall continue to serve in their existing capacities on and after the Effective Date. (Hianik Aff. ¶ 13(vi).) In accordance with Section 5.2.4 of the Plan, the board of directors of each Reorganized Debtor (other than Reorganized RHDC) is identified and listed on Exhibit 5.2.4 of the Plan (filed prior to the Confirmation Hearing).  In addition, in accordance with the Plan, all existing executive officers of the Reorganized Debtors shall continue to serve in their existing capacities on and after the Effective Date. Id.

2.     The composition of the initial board of directors of Reorganized RHDC and the other Reorganized Debtors was the subject of extensive negotiation among the constituencies and was a key ingredient of the Noteholders Plan Term Sheet.  In light of the foregoing, the manner of selection of the initial directors of Reorganized Debtors as set forth in

28

the Plan, the Certificate of Incorporation and By-Laws or other constituent documents of the

applicable Reorganized Debtor and applicable state law, is consistent with the interests of the

holders of Claims and Interests and public policy. (Plan §5.2, Hianik Aff. ¶ 13(vi).)

Accordingly, the Plan satisfies the requirements of 1123(a)(7) of the Bankruptcy Code.

> ### e.   Section 1123(b)(1) — Impairment of Claims and Interests.

As permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the

Plan provides for the impairment of certain classes of Claims and Interests, while leaving other

Classes unimpaired. The Plan thus modifies the rights of the holders of certain Claims and

Interests and leaves the rights of others unaffected.

> ### f.   Section 1123(b)(2) — Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases.

In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VI and

other provisions of the Plan and this Confirmation Order provide for the assumption, assumption

and assignment or rejection of the executory contracts and unexpired leases of the Debtors that

have not been previously assumed, assumed and assigned or rejected pursuant to section 365 of

the Bankruptcy Code and appropriate authorizing orders of the Bankruptcy Court; provided,

however, that the Debtors reserve the right, at any time prior to the Effective Date, to amend

Exhibit 6.5 of the Plan (filed with the Plan Supplement) to: (i) delete any executory contract or

unexpired lease listed therein, thus providing for its assumption pursuant hereto; or (ii) add any

executory contract or unexpired lease to Exhibit 6.5, thus providing for its rejection. (Plan Art.

VI.) Accordingly, the Plan provisions comply with section 1123(b)(2) of the Bankruptcy Code.

> ### g.   Section 1123(b)(3) — Retention, Enforcement and Settlement of Claims Held by the Debtors.

DB02:9138743.1

068387.1001

In accordance with section 1123(b)(3) of the Bankruptcy Code, <u>Section</u> 10.7 of the Plan provides that, except as otherwise provided in the Plan, this Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with the Plan, the Debtors and their Estates shall retain the Litigation Claims. The Plan further provides that the Reorganized Debtors, as the successors in interest to the Debtors and their Estates, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Litigation Claims as set forth at <u>Exhibit</u> 1.1.113 of the Plan (filed with the Plan Supplement). In the Plan, the Debtors or the Reorganized Debtors also expressly reserve all rights to prosecute any and all Litigation Claims against any Person, except as otherwise expressly provided in the Plan, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Litigation Claims upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date. (Plan § 10.7.) Accordingly, the provisions in the Plan comply with section 1123(b)(5) of the Bankruptcy Code.

  **h.** **Section 1123(b)(6) — Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code.**

Moreover, in accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code, including: (i) the provisions of <u>Article</u> III of the Plan governing treatment on account of Allowed Claims; (ii) the provisions of <u>Article</u> VII of the Plan governing distributions under the Plan; and (iii) the provisions of <u>Article</u> XI of the Plan regarding retention of jurisdiction by the Bankruptcy Court over certain matters after the Effective Date. (Plan Art. III, VII and XI.) Such provisions, and all other provisions of the Plan,

DB02:9138743.1                         068387.1001

are consistent with the Bankruptcy Code in accordance with section 1123(b)(6) of the Bankruptcy Code.

### i. Section 1123(d) — Cure of Defaults.

In accordance with section 1123(d) of the Bankruptcy Code, <u>Section</u> 6.2 of the Plan and this Confirmation Order provide for the satisfaction of any monetary amounts by which each executory contract and unexpired lease to be assumed is in default by payment of the default amount in cash on the Effective Date or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree in accordance with section 365(b)(1) of the Bankruptcy Code. All cure amounts (including, without limitation, the Cure Amounts) have been fixed or will be fixed pursuant to the Assumption Notice and Cure Amounts Order or, to the extent applicable, by separate order of the Bankruptcy Court. (Plan § 6.2.) Accordingly, the Plan satisfies the requirements of section 1123(d) of the Bankruptcy Code.

### j. The Plan Complies With Bankruptcy Rule 3016

The Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a). Other than conduct otherwise enjoined by the Bankruptcy Code, the Plan describes in specific and conspicuous language all acts to be enjoined and identifies the entities subject to such injunction, in accordance with Bankruptcy Rule 3016(c).

### k. Section 1129(a)(2) — Compliance with Applicable Provisions of the Bankruptcy Code.

The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the

DB02:9138743.1 068387.1001

Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Solicitation Order and any and all other applicable rules, laws and regulations. Votes with respect to the Plan were solicited in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Order. Based on the record before the Court, the Debtors, the Reorganized Debtors, the members of the Unsecured Creditors Committee, the Prepetition Lenders, the Prepetition Lender Agents, the Consenting Noteholders, the Notes Indenture Trustees, and each of their respective Related Persons have solicited votes on the Plan and/or participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Solicitation Order, the Bankruptcy Code, and the Bankruptcy Rules. The Debtors, Reorganized Debtors, and each of their respective Related Persons, acting in such capacity, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation and limitation of liability provisions in <u>Section</u> 10.5 of the Plan and Paragraph II.P of this Confirmation Order.

I.    **Section 1129(a)(3) — Proposal of the Plan in Good Faith.**

1.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law. Based on the evidence presented at the Confirmation Hearing and the entire record of these Chapter 11 Cases, the Bankruptcy Court hereby finds and concludes that the Plan has been proposed with the legitimate purpose of reorganizing the affairs of each of the Debtors and maximizing the returns available to creditors and other parties in interest. Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, the Plan is designed to allow each of the Debtors to reorganize on a going concern basis while maximizing recoveries to their

32

creditors and providing the Reorganized Debtors with a capital structure that will allow the Reorganized Debtors to satisfy their obligations with sufficient liquidity and capital reserves and to fund necessary capital expenditures and otherwise conduct their business in the ordinary course. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan Support Agreements and Plan Term Sheets, the Plan itself, the process leading to its formulation, and the solicitation of votes in support of the Plan. Accordingly, the Plan satisfies the "good faith" requirement of section 1129(a)(3) of the Bankruptcy Code.

2.  Moreover, the Plan itself and the arm's length negotiation among the Debtors, the Prepetition Lenders, the Prepetition Agents, the Consenting Noteholders, the Unsecured Creditors Committee and each of their respective representatives, leading to the Plan's formulation (including, without limitation, the Plan Support Agreements and the Plan Term Sheets), as well as the overwhelming support of creditors for the Plan, reflect the result of these arm's length negotiations, embody the best interests of all the constituencies of the Debtors' estates and provide independent evidence of the Debtors' good faith in proposing the plan. (Hianik Aff. ¶ 16.) Accordingly, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

### m. Section 1129(a)(4) — Court Approval of Certain Payments as Reasonable.

In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incidental to the Chapter 11 Cases, including Claims for professional fees, has been or will be made by a Debtor other than payments that have been authorized by order of the Bankruptcy Court. (Hianik Aff. ¶ 17.) Section 2.1 of the Plan provides for the payment of

33

various Administrative Claims, including Claims for professional fees, which are subject to

Bankruptcy Court approval and the standards of the Bankruptcy Code. (Plan § 2.1.) In addition,

the Notes Indenture Trustee Fees which are payable by the Debtors pursuant to Section 12.8 of

the Plan will be subject to a "reasonableness" standard. (Plan §§ 1.1.134, 12.8.) Accordingly,

the provisions in the Plan comply with section 1129(a)(4) of the Bankruptcy Code.

<blockquote>

**n.**     **Section 1129(a)(5) — Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

</blockquote>

In the Disclosure Statement, the Plan, and Exhibits 5.2.2 and 5.2.4 to the Plan

(filed with the Supplementary PS Documents or prior to the Confirmation Hearing), the Debtors

have disclosed all necessary information regarding the Debtors' and Reorganized Debtors'

officers and directors, including for those directors and officers who may constitute insiders, the

compensation paid or to be paid as of the Effective Date. The appointment or continuance of the

proposed directors and officers is consistent with the interests of the holders of Claims and

Interests and with public policy. (Hianik Aff. ¶ 18.) Accordingly, the Plan satisfies the

requirements of section 1129(a)(5) of the Bankruptcy Code.

<blockquote>

**o.**     **Section 1129(a)(6) — Approval of Rate Changes.**

</blockquote>

The Debtors' current businesses do not involve the establishment of rates over

which any regulatory commission has or will have jurisdiction after Confirmation.

<blockquote>

**p.**     **Section 1129(a)(7) — Best Interests of Holders of Claims and Interests.**

</blockquote>

1.     Each Holder of an Impaired Claim that has not accepted the Plan will on

account of such Claim, as demonstrated by the liquidation analysis included as Exhibit F to the

Disclosure Statement, receive or retain property under the Plan having a value, as of the

Effective Date, that is not less than the amount that such Holder would so receive or retain if the

34

Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. (Fasel Aff. ¶ 13.)

2.    The liquidation analysis annexed to the Disclosure Statement as Exhibit F (the "Liquidation Analysis"), including the methodology used and estimations and assumptions made therein, and the evidence related thereto that was proffered at the Confirmation Hearing, (a) are persuasive and credible as of the dates such evidence was prepared, presented or proffered, (b) have not been controverted by other persuasive evidence and have not been challenged, (c) are based upon reasonable and sound assumptions, and (d) provide a reasonable estimate of the liquidation value of the Debtors' Estates upon a conversion to a chapter 7 proceeding. (Fasel Aff. ¶ 12.) Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

q.    **Section 1129(a)(8) — Acceptance of the Plan by Each Impaired Class.**

1.    Pursuant to section 1129(a)(8) of the Bankruptcy Code, all classes of Claims and Interests have either accepted the Plan or are unimpaired. Specifically, each of the Convenience Claims (other than Classes 12C, 14C and 19C), Noteholders Claims, RHDI Noteholders Guaranty Claims, Prepetition Lenders Claims, Prepetition Lenders Guaranty Claims, General Unsecured Claims, and Intercompany Claims were entitled to vote on the Plan, and each such Class overwhelmingly voted to accept the Plan. (GCG Voting Aff. ¶¶ 3,15.) Although the Plan includes Classes 12C, 14C and 19C (Convenience Claims against various of the Debtors) and Classes 4H, 5F, 7F, 9F, 11G, 13G, 14G, 15G, 17E or 19E (Intercompany Claims against various of the Debtors) in its classification structure, as of the Voting Deadline, none of such Classes contained any Claims. (GCG Voting Aff. fn. 3, 5) Accordingly, the Court hereby determined that, consistent with Section 3.1.1(a) of the Plan, section 1129(a)(8) of the

Bankruptcy Code does not apply with respect to Classes 12C, 14C and 19C and Classes 4H, 5F, 7F, 9F, 11G, 13G, 14G, 15G, 17E or 19E. Classes 1A through 19A and 1B through 19B, and Classes 2G, 3H, 4I, 5G through 9G, 10H through 16H, 17F through 19F, and 20B are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, section 1129(a)(8) of the Bankruptcy Code has been satisfied with respect to all Classes of Claims and Interests. (Hianik Aff. ¶21.)

2.      Class 11 is impaired and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. As provided in <u>Section</u> I.T.A.w below, the Plan satisfies the requirements of section 1129(b) with respect to Class 11 as a matter of law.

>    **r.      Section 1129(a)(9) — Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

1.      The Plan also meets the requirements regarding the payment of Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims as set forth in section 1129(a)(9) of the Bankruptcy Code.

2.      <u>Section</u> 2.1(a) of the Plan as modified by this Confirmation Order provides that either (i) the latest to occur of (a) the Effective Date (or as soon as practicable thereafter), (b) the date upon which such Administrative Expense Claim becomes an Allowed Claim and (c) such other date as agreed upon by the Debtors and the Holder of such Administrative Expense Claim, or (ii) on such other date as the Bankruptcy Court may order, each Holder of an Allowed Administrative Expense Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Claim, (x) cash equal to the full unpaid amount of such Allowed Administrative Expense Claim, or (y) such other treatment as the applicable Debtor and such Holder shall have agreed; <u>provided, however,</u> that Allowed Administrative Expense Claims not yet due or that represent obligations incurred by the Debtors

36

in the ordinary course of their business during these Chapter 11 Cases, or assumed by the Debtors during these Chapter 11 Cases, shall be paid or performed when due in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations. (Plan §2.1.)

3.　　　Section 2.2 of the Plan provides that except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment (in which event such other agreement shall govern), each Holder of an Allowed Priority Tax Claim against any of the Debtors that is due and payable on or before the Effective Date shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, cash equal to the amount of such Allowed Priority Tax Claim on the later of (i) the Effective Date (or as soon as practicable thereafter) and (ii) the date such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as practicable. Section 7.2 of the Plan also provides that all Allowed Priority Tax Claims against any of the Debtors which are not due and payable on the Effective Date shall be paid in the ordinary course of business by the Reorganized Debtors in accordance with the terms thereof. (Plan §2.2.)

4.　　　Article III of the Plan provides that except to the extent that a Holder of an Allowed Claim in Classes 1A through 19A (Priority Non-Tax Claim) has agreed in writing to a different treatment (in which event such other writing will govern), each Holder of an Allowed Priority Non-Tax Claim that is due and payable on or before the Effective Date shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for, such Claim, at the election of the Debtors: (i) cash equal to the amount of such Allowed Priority Non-Tax Claim in accordance with section 1129(a)(9) of the Bankruptcy Code, on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date such Claim

DB02:9138743.1                                                                                          068387.1001

becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, or (ii) such other treatment required to render such Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. All Allowed Claims in Classes 1A through 19A which are not due and payable on or before the Effective Date shall be paid by the Reorganized Debtors when such claims become due and payable in the ordinary course of business in accordance with the terms thereof.

5.      Accordingly, the provisions in the Plan comply with section 1129(a)(9) of the Bankruptcy Code.

s.      **Section 1129(a)(10) — Acceptance By at Least One Impaired, Non-Insider Class.**

1.      As evidenced by the GCG Voting Affidavit and as reflected in the record of the Confirmation Hearing, at least one Impaired Class of Claims has voted in sufficient number and amount to accept the Plan, determined without including the acceptance by any insider, with respect to every Debtor (with the sole potential exception of RHD Service LLC ("RHD Service")). Accordingly, the Court hereby finds and determines that section 1129(a)(10) has been satisfied in connection with each of the Debtors.

RHD Service contains only one Class of Claims that was designated as Impaired as of the Date that the Plan was filed. That Class of Claims (Class 20A) consists solely of three intercompany claims, each of which voted to accept the Plan. (GCG Voting Aff. ¶ fn, 4.) With respect to RHD Service, as of the Petition Date, there were no Holders of Claims, and as of the date of the Confirmation Hearing, there are no Holders of Claims, other than the foregoing intercompany claims. (GCG Voting Aff. ¶ fn, 4.) In addition, in consideration of, among other things, the full payment of the aggregate principal amount owing to the three RHD Service creditors in Class 20A, pursuant to Section 3.11.1(b) of the Plan, the proceeds of which such

38

creditors intend to remit to the applicable Prepetition Lenders Agent on or after the Effective

Date in accordance with the terms of the applicable Amended and Restated Credit Document,

and based upon the other reasons set forth in the Hianik Affidavit, each of the RHD Service

creditors in Class 20A has, since the Plan was filed, knowingly and voluntarily entered into an

accord and satisfaction, pursuant to which each creditor has agreed that the cash distribution of

the principal amount owed to it under Section 3.11.1(b) of the Plan is, and shall be deemed to be,

in full and complete satisfaction of its respective Claim without the payment of interest or any

other or further amounts. (Hianik Aff. ¶23.)  Accordingly, pursuant to section 1124 of the

Bankruptcy Code, the Claims in Class 20A are unimpaired.  Therefore, based upon all of the

evidence in the record in these Chapter 11 Cases, including the Hianik Affidavit and GCG

Voting Affidavit, and the facts and circumstances with respect to RHD Service, the Court hereby

finds and concludes that section 1129(a)(10) of the Bankruptcy Code has been satisfied with

respect to each of the Debtors (including RHD Service).

**t.      Section 1129(a)(11) — Feasibility of the Plan.**

Although the Debtors' businesses operate in highly competitive industry and

markets, and although it is impossible to predict with certainty the precise future profitability of

the Debtors' businesses or industries and markets in which the Debtors operate, as demonstrated

by the Debtors' financial projections contained in Exhibit E to the Disclosure Statement and the

evidence in the record, including, without limitation, the Hianik and Stearns Affidavits,

Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further

financial reorganization, of the Debtors, the Reorganized Debtors or any successor to the

Reorganized Debtors under the Plan. (Hianik Aff. ¶ 24; Stearns Aff. ¶ 16.)  Based upon all of the

evidence in the record, including, without limitation, the Hianik and Stearns Affidavits, upon the

Effective Date, the Reorganized Debtors will have sufficient operating cash and liquidity to meet

39

their financial obligations under the Plan and to fund ongoing business operations. (Hianik Aff. ¶ 25; Stearns Aff. ¶ 17.) Therefore, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

### u.    Section 1129(a)(12) — Payment of Bankruptcy Fees.

<u>Section</u> 12.7 of the Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date. (Plan § 12.7.)

### v.    Section 1129(a)(13) — Retiree Benefits.

The Plan provides that except and to the extent previously assumed by an order of the Bankruptcy Court, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Employee Pension Plans, all Employee Benefit Plans, including the Employment and Retirement Benefit Agreements, of the Debtors, as amended or modified, including programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before, on or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed except for (i) executory contracts or plans specifically rejected pursuant to the Plan, and (ii) executory contracts or plans that have previously been rejected, are the subject of a motion to reject or have been specifically waived by the beneficiaries of any plans or contracts; <u>provided</u>, <u>however</u>, that (x) the Debtors shall pay all "retiree benefits" (as defined in section 1114(a) of the Bankruptcy Code), and (y) the Debtors shall amend those certain Employment and Retirement Benefit Agreements attached as <u>Exhibit</u> 5.9.1 of the Plan (filed with the Plan Supplement) substantially in the form of the amendments attached as <u>Exhibit</u> 5.9.1 of the Plan. (Plan § 5.9.1.) Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

DB02:9138743.1

068387.1001